Thomas GALLIMORE, Plaintiff,

v.

NEWMAN MACHINE CO., INC.,
and Newman Machine Co.,
Defendants.

No. 1:02 CV 00122.

United States District Court,
M.D. North Carolina.

Jan. 15, 2004.

Stephen Ashley Boyce, Winston–Salem, NC, for plaintiff.

Denis E. Jacobson, Amanda Leigh Fields, Tuggle, Duggins & Meschan, P.A., Greensboro, NC, for defendants.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter is presently before the Court on Defendants Newman Machine Company, Inc. and Newman Machine Company's (collectively "Defendants" or "Newman Machine") Motion for Summary Judgment [Document # 13] on Plaintiff Thomas Gallimore's ("Plaintiff" or "Gallimore") claims of discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, and wrongful discharge on the basis of disability in violation of the public policy of North Carolina as stated in the North Carolina Equal Employment Practices Act, North Carolina General Statutes sections 143–422.1 to –422.3. Plaintiff brings two claims of discrimination under the ADA against Newman Machine, one for failure to provide reasonable accommodations for his disabilities and the other for constructively discharging him on the basis of disability. Also before this Court are two Motions to Strike by Defendants. The first is Defendants' Motion to Strike [Document # 18] (hereinafter "First Motion to Strike") portions of affidavits submitted by Plaintiff and to strike portions of Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment. The second is Defendants' Motion to Strike [Document # 22] (hereinafter "Second Motion to Strike") Plaintiff's Reply to Defendants' Reply to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Thomas Gallimore began working for Newman Machine as a machinist and machine-tool operator in October 1990. (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 2.) Newman Machine uses a wide variety of machine tools, some of which are manually operated ("manual machines") and others of which are computer numerically controlled ("CNC machines"). (*Id.*) According to Plaintiff, the critical difference between the two types of machines from the perspective of the machine's operator is that the manual machines require "strenuous pulling, pushing, and prolonged standing," whereas the CNC machines do not. (*Id.* at 2–3.)

In December 1994, Plaintiff had his right hip replaced by Dr. Stephan Lowe ("Dr.Lowe"). (*See id.* at 3; Defs.' Br. Supp. Mot. Summ. J. at 3.) Upon returning to work, Plaintiff was assigned to the CNC machines and operated them satisfactorily. (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 3.) In September 1999, Dr. Lowe replaced Plaintiff's left hip. (*Id.* at 4; Defs.' Br. Supp. Mot. Summ. J. at 3.) Shortly after he returned to work in January 2000, Plaintiff alleges that Kenny Lowe, at that time a Shop Superintendent at Newman Machine, informed him that his "days were numbered." (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 4, 6 (internal quotation marks omitted).) Kenny Lowe required Plaintiff to train another employee, James Swain, on the CNC machines. (*Id.* at 6.) From January 2000 until October 2000, Plaintiff trained James Swain on the CNC

machines. (*Id.* at 6–7.) According to Plaintiff, during this time, Kenny Lowe assigned Plaintiff to work on manual machines, and on Monday, October 23, 2000, Plaintiff was assigned to work on a "very large manually controlled lathe." (*Id.* at 6–7.) Plaintiff contends that he had repeatedly informed Newman Machine that he was physically unable to operate the manual machines and requested that Newman Machine reassign him to the CNC machines. (*Id.*) On Thursday, October 26, 2003, Plaintiff reported to Newman Machine that while trying to operate the large, manually controlled lathe, he experienced great pain, which prevented him from sleeping at night. (*Id.* at 7; Gallimore Dep. at 30; Defs.' Br. Supp. Mot. Summ. J. at 4–5.) On either Friday, October 27, 2000 (Gallimore Dep. at 30–31), or Monday, October 30, 2000 (Defs.' Br. Supp. Mot. Summ. J. at 5), Plaintiff went to see a doctor who diagnosed him with a pulled muscle in his back. (Gallimore Dep. at 29.) Plaintiff then took a week of vacation to recover from his strained back. (Pl.'s Br. Opp. Mot. Summ. J. at 7.)

During that week, Plaintiff, on November 3, 2000, interviewed and accepted a position with Reynolda Cutting Tools which he was scheduled to begin on November 13, 2000. (Defs.' Br. Supp. Mot. Summ. J., Exh. 2 (Gallimore Diary of 11/3/00).) According to his diary entry dated November 3, 2000, Plaintiff decided to give his notice to Newman Machine on November 7, 2000. (*Id.*) Upon his return from vacation, Kenny Lowe assigned Plaintiff to the Quiet Cut Department where he worked from November 6, 2000, to November 7, 2000. (*Id.*, Exhs. 3–4 (Gallimore Diary of 11/6/00).) According to Defendants, Plaintiff was assigned to the Quiet Cut Department because it is a light-duty work area. (*See id.* at 6.) According to Plaintiff, however, while working in the Quiet Cut Department, he was required to stand all day and the floor was covered with oil and water. (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 8.) Plaintiff complained to various supervisors regarding the allegedly dangerous conditions in the Quiet Cut Department. (*Id.* at 8–9.) Ultimately, however, Plaintiff "became convinced that he would eventually fall and injure himself." (*Id.* at 10.) Furthermore, Plaintiff worked there on November 6 and 7 (Gallimore Diary of 11/6/00 & 11/7/00; Jeff Cox Aff. ¶ 4; Charles Myers Aff. ¶ 10–11), and according to Plaintiff, he quit his job at Newman Machine on November 7, 2000. (Gallimore Diary of 11/7/00.) It is unclear whether Plaintiff continued to work at Newman Machine after November 7, 2000, that is, whether Plaintiff merely put in his notice of resignation on November 7, 2000, or if he left Newman Machine altogether on that date. Plaintiff, however, has proffered no objective evidence that he worked at Newman Machine after November 7, 2000, and Newman Machine provided a sworn affidavit that he did not. (Myers Aff. ¶ 11.) According to Newman Machine, however, Plaintiff did not give his formal notice of resignation to Newman Machine until November 15, 2000. (Jean York Aff. ¶ 4.)

After resigning from Newman Machine, Plaintiff filed a complaint with the EEOC for discrimination on the basis of disability. Plaintiff subsequently filed a lawsuit in this Court on February 22, 2002. (Compl.) Defendants do not dispute that Plaintiff has exhausted his administrative remedies and that this Court has jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331 and his state-law claims pursuant to 28 U.S.C. § 1367. Therefore, the Court will now consider Defendants' Motions to Strike and their Motion for Summary Judgment.

## II. DEFENDANTS' MOTIONS TO STRIKE

The Court will first consider Defendants' Motions to Strike, since they bear

on what will comprise the record which the Court may look to in ruling on Defendants' Motion for Summary Judgment. In this case, Defendants have filed two Motions to Strike. Defendants' First Motion to Strike requests the Court to strike portions of affidavits submitted by Plaintiff and to strike portions of Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment. Defendants' Second Motion to Strike requests the Court to strike Plaintiff's Reply to Defendants' Reply to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment. The Court will address Defendants' two Motions to Strike in turn.

### A. Defendants' First Motion to Strike

### 1. Motion to Strike Portions of the Second Affidavit of Thomas Gallimore

Defendants' First Motion to Strike moves the Court to strike portions of Plaintiff's Second Affidavit, which Plaintiff submitted as an attachment to his Brief in Opposition to Defendants' Motion for Summary Judgment. As set forth in Federal Rule of Civil Procedure 56(e), an affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Specifically, Defendants object to portions of Plaintiff's Second Affidavit as being inadmissible hearsay. The Court has reviewed each of the statements to which Defendants have objected. The Court notes that the passages objected to fall into the following general categories: (1) passages describing statements Dr. Lowe made to Plaintiff, (2) passages regarding alleged letters written by Dr. Lowe, (3) passages describing statements Plaintiff made to his supervisors at Newman Machine, and (4) passages describing statements made to Plaintiff by his supervisors at Newman Machine.

### a. Category 1 Statements

■ Defendants object to the statements in category 1, that is, the portions of the affidavit that set forth statements purportedly made by Dr. Lowe, as being "classic inadmissible hearsay, offered for the truth of the matter asserted therein." (Defs.' Br. Supp. [1st] Mot. Strike at 2.) The portions of the affidavit that Defendants object to are as follows:

> The surgeon Dr. Stephan Lowe told me that I could return to work, but that I needed to have a more sedentary job. He told me that I could no longer perform strenuous work or stand for prolonged periods and that I could not bend at the waist or lift heavy objects.

> Dr. Lowe had told me that if I were ever to fall, I would probably crack my pelvis, shatter my femur or dislocate my hips.

(Gallimore 2d Aff. ¶¶ 10, 33.)

Under Federal Rule of Evidence 801(c), a statement is hearsay, and therefore inadmissible, if it "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Plaintiff contends that these statements, however, fall within an exception to the hearsay rule and are therefore admissible under Federal Rule of Evidence 803(3) as " 'statement[s] of [Plaintiff's] then existing state of mind.' " (Pl.'s Br. Opp. [Defs.' 1st] Mot. Strike [Document # 24] at 2 (quoting Fed.R.Evid. 803(3)).) Plaintiff contends that the first statement demonstrates plaintiff's "then existing state of mind and his motive for requesting a transfer to the CNC machines" (*id.*), and the second statement demonstrates Plaintiff's "the existing state of mind .... and his motive for asking to sit down." (*Id.* at 6).

The Court agrees with Plaintiff's contention that Plaintiff's statements are admissible to show Plaintiff's then existing state of mind and his reasons for requesting a

transfer and for sitting down. Therefore, the Court will not strike these statements from Plaintiff's Second Affidavit. The Court further notes, however, that Plaintiff may not use these statements for the hearsay purpose of proving the truth of the matter asserted in these statements, that is, the extent of Plaintiff's actual medical limitations and conditions. As Plaintiff concedes, these statements are therefore inadmissible to show that Plaintiff was actually disabled within the meaning of the ADA, and the Court will not rely on these statements when determining whether Plaintiff has met his burden to prove a prima facie case of disability under the Americans with Disabilities Act.

b. Category 2–4 Statements

Defendants further object to the statements the Court has grouped in categories 2–4, that is, (2) passages regarding alleged letters written by Dr. Lowe, (3) passages describing statements Plaintiff made to his supervisors at Newman Machine, and (4) passages describing statements made to Plaintiff by supervisors at Newman Machine. Plaintiff again contends that none of these statements are offered to prove that Plaintiff is in fact disabled but instead are admissible for other purposes: (1) to show the existence of Dr. Lowe's letters, (2) to prove that Newman Machine was on notice of Plaintiff's physical limitations, (3) to show Plaintiff's then existing state of mind and his motives for requesting accommodations from Newman Machine, and (4) to ultimately prove that the reason Plaintiff was placed on manual machines and in the Quiet Cut Department was to force him to resign. Because these other purposes are not relevant to a determination of whether Plaintiff was in fact disabled under the ADA, these statements will ultimately not be necessary to this Court's decision regarding Defendants' Motion for Summary Judgment, and the Court will not rely on these statements in

ruling on Defendants' Motion. Therefore, without deciding whether these statements are in fact admissible, the Court will deny Defendants' Motion to Strike these statements as moot.

2. Motion to Strike Portions of the Second Affidavit of Dale Gallimore

Defendants' First Motion to Strike also moves to strike the following statements Dale Gallimore made in her Second Affidavit regarding her husband's purported limitations:

a. He can only stand for 45 minutes at a time—an hour at the very most.

b. He walks with great difficulty. Sometimes, he uses a cane.

c. He cannot bend down and pick up anything.

d. He cannot squat, stoop, kneel down or crawl.

e. He cannot cross his legs.

f. He cannot sit with his knees higher than 90 degrees.

h. He cannot wear shoes with laces because he cannot tie them.

i. He cannot go up and down steps without holding on to something.

j. He is afraid to go outside in the rain or in the snow because he is afraid of falling.

(Dale Gallimore 2d Aff. ¶ 3.) Defendants contend that these statements are "conclusions and opinions regarding the nature and extent of limitations on Plaintiff's physical activities [and therefore] are not the proper subject of lay witness testimony and instead enter the realm of conclusions and opinions that only an expert can establish based upon specialized knowledge, skill, experience, training and education ...." (Defs.' Br. Supp. [1st] Mot. Strike at 4–5.) Plaintiff responds that these state-

ments are admissible as lay opinion testimony under Federal Rule of Evidence 701.

Federal Rule of Evidence 701 governs the admissibility of lay opinion testimony. Rule 701 states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge . . . .

The Fourth Circuit Court of Appeals has held that Rule 701 "generally does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir.2000) (internal quotations omitted). In the present case, Defendants seem to concede that Dale Gallimore's statements meet the first two prongs of the Rule 701 test for admissibility. These statements are "rationally based on" Dale Gallimore's perceptions of her husband's physical limitations. Further, they are "helpful to . . . the determination of a fact in issue," that is, the extent of Plaintiff's physical limitations.

■ The issue, therefore, is whether these statements are "based on scientific, technical, or other specialized knowledge." The Court first notes that while Plaintiff has characterized Dale Gallimore's statements as admissible lay opinion testimony, the statements are more accurately characterized as "inferences that could have been rationally drawn from facts of which [Dale Gallimore] had personal knowledge." *See Winant v. Bostic*, 5 F.3d 767, 772 (4th Cir.1993). Defendants cite no case law to support their assertion that the specific

inferences regarding Plaintiff's physical limitations that Dale Gallimore has drawn based on her personal observations of Plaintiff would require her to possess "scientific, technical, or other specialized knowledge" that only an expert would possess. For the foregoing reasons, therefore, the Court will not strike these portions of Dale Gallimore's Second Affidavit.

3. Motion to Strike Claims from Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment

Defendants' First Motion to Strike also requests this Court to strike certain claims from Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment. Defendants argue that Plaintiff included the following two claims in his Opposition Brief that he did not include in his Complaint: "(1) a claim for constructive discharge under the ADA; and (2) a claim of disability based on inability to bathe and dress." (Defs.' Br. Supp. [1st] Mot. to Strike at 6.) Plaintiff contends that his Complaint, when construed in the light most favorable to him, encompasses claims under both of these theories. (Pl.'s Br. Opp. Defs.' [1st] Mot. Strike at 8–10.) For the reasons more fully discussed in Section III.B of this opinion, the Court will deny Defendants' Motion to Strike Plaintiff's claims for constructive discharge under the ADA and Defendants' Motion to Strike Plaintiff's claims of disability based on inability to bathe and dress as moot. Therefore, Defendants' Motion to Strike claims from Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment is denied.

For the foregoing reasons, therefore, the Court will deny Defendants' First Motion to Strike in all respects.

### B. Defendants' Second Motion to Strike

■ In their Second Motion to Strike, Defendants also move this Court to strike Plaintiff's Reply Brief [Document # 21] (hereinafter the "Sur–Reply") that Plaintiff filed in reply to Defendants' Reply to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment. (Defs.' 2d Mot. Strike.) In support of their Second Motion to Strike, Defendants argue that Plaintiff's Sur–Reply is not allowed under Federal Rule of Civil Procedure 56 and Local Rules 7.3 and 56.1. (Defs.' Br. Supp. [2d] Mot. Strike at 2.) Plaintiff contends, however, that he is entitled under these rules to file a Sur–Reply. (Pl.'s Br. Opp. Defs.' [2d] Mot. Strike.) The Court notes that in this district, Local Rules 7.3 and 56.1 govern whether Plaintiff is allowed to file a Sur–Reply to Defendants' Reply Brief. Local Rule 56.1 specifically applies to motions for summary judgment and prescribes the proper manner for the party against whom a. claim is asserted, that is, the "defending party," to file its motion for summary judgment. Local R. 56.1(e). It then provides for the nonmoving party, that is, the party who made the claim challenged by the "defending party," to file a response brief. *Id.* Finally, it allows the "defending party" to file a reply brief to "address matters newly raised in the [nonmoving party's] response." *Id.*

Plaintiff contends that he is allowed to file his Sur–Reply because he "is the defending party to Defendants' summary judgment motion." (Pl.'s Br. Opp. Defs.' [2d] Mot. Strike at 2 (citing Local R. 56.1(e)).) Plaintiff's argument is misplaced, however, because, in the context of Local Rule 56.1, Defendants are the "defending part[ies]," that is, they are the parties defending against Plaintiff's claims, and consequently they are the only parties allowed to file a reply brief. Therefore, because Plaintiff's Sur–Reply is not allowed under the local rules of this district, the Court will grant Defendants' Motion to Strike Plaintiff's Sur–Reply. *Cf. Brown v. Sears Auto. Ctr.,* 222 F.Supp.2d 757, 760–61 (M.D.N.C.2002) (striking the plaintiff's second response brief because the plaintiff was only permitted to file one response brief under the local rules), *aff'd per curiam,* 51 Fed.Appx. 427 (4th Cir.2002). For the foregoing reasons, therefore, Defendants' Second Motion to Strike is granted.

### III. Motion for Summary Judgment

#### A. Summary Judgment Standard

■ Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is considered "material" if it "might affect the outcome of the suit under the governing law ...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Under this standard, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* As a result, the Court will only enter summary judgment in favor of the moving party when " 'the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the [nonmoving] party cannot prevail under any circumstances.' " *Campbell v. Hewitt, Coleman & Assocs.,* 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.,* 381 F.2d 245, 249 (4th Cir.1967)).

When ruling on a summary judgment motion, the Court "view[s] the evidence in the light most favorable to the non-moving party, granting that party the benefit of all reasonable inferences." *Bailey v. Blue*

Cross & Blue Shield of Va., 67 F.3d 53, 56 (4th Cir.1995). The moving party bears the initial "burden of establishing that there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir.1992). Once the moving party has met this burden, the adverse, or nonmoving, party must set forth specific facts showing that there is a genuine issue for trial. *Id.* In so doing, the adverse party may not rest on mere allegations, denials, or unsupported assertions, but must, through affidavits or otherwise, provide evidence of a genuine dispute. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510; *Catawba Indian Tribe*, 978 F.2d at 1339. In other words, the nonmoving party must show "more than . . . some metaphysical doubt as to the material facts," for the mere existence of a scintilla of evidence in support of its position is insufficient to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356; 89 L.Ed.2d 538 (1986); *Catawba Indian Tribe*, 978 F.2d at 1339.

## B. Plaintiff's ADA Claims

Plaintiff claims that Defendants unlawfully discriminated against him on the basis of disability in violation of the ADA. (Compl.¶¶ 19–27.) Specifically, Plaintiff alleges that Newman Machine "intentionally limited [his] duties so as to adversely affect his opportunities or status because of his disability" (*id.* ¶ 22), and "intentionally refused to make reasonable accommodations for [his] known physical limitations . . . ." (*Id.* ¶ 23.) Plaintiff further claims that Newman Machine constructively discharged him on the basis of his disability. (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 17–18.) The Court notes that, as discussed above, Defendants' First Motion to Strike moves this Court to strike Plaintiff's claim for constructive discharge under the ADA

from Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment because, unlike Plaintiff's failure-to-reasonably-accommodate claim, Plaintiff failed to raise this claim in his Complaint. The Court, however, without determining whether Plaintiff adequately stated his ADA constructive-discharge claim in his Complaint, elects to resolve Plaintiff's claim for constructive discharge on the merits, and will, as more fully discussed in Section III.B.3 below, deny Defendants' Motion to Strike Plaintiff's claim for constructive discharge as moot.

■■■ To prove his claims under the ADA, that is, his claim that Newman Machine discriminated against him on the basis of disability by failing to reasonably accommodate him and his claim that Newman Machine constructively discharged him in violation of the ADA, Plaintiff may rely on direct evidence, indirect evidence, or a combination of both direct and indirect evidence. *See, e.g., Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 2154–55, 156 L.Ed.2d 84 (2003); *Rishel v. Nationwide Mut. Ins. Co.*, 297 F.Supp.2d 854, 859 (M.D.N.C.2003); *Bayles v. Fid. Bank*, 44 F.Supp.2d 753, 757–58 (M.D.N.C. 1998). In this case, Plaintiff has only offered indirect evidence of discrimination. Therefore, the three-step indirect method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is applicable to Plaintiff's case. Under the *McDonnell Douglas* scheme of proof, a plaintiff must first prove, by a preponderance of the evidence, a prima facie case of discrimination. *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57–58 (4th Cir.1995) (applying *McDonnell Douglas* to an ADA claim). Once the plaintiff has established his prima facie case, the defendant must respond with evidence that it acted with a legiti-

mate, nondiscriminatory reason for its employment decision. *Id.* at 58. If the defendant meets this burden of production, the presumption of discrimination created by the prima facie case vanishes, requiring the plaintiff to prove that the defendant's proffered reason is a pretext for discrimination in order to recover. *Id.* In light of *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the plaintiff is no longer required to show pretext *plus* some additional evidence of discrimination. *Id.* at 148, 120 S.Ct. at 2109; *see Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000) (applying *Reeves*). In other words, the Court may infer the ultimate fact of discrimination merely from the falsity of the defendant's proffered explanation. *Rowe*, 233 F.3d at 830. Nevertheless, under *McDonnell Douglas*, the plaintiff at all times bears the ultimate burden of persuasion with respect to the defendant's alleged unlawful discrimination. *Ennis*, 53 F.3d at 58.

▆▆▆▆ The unlawful discrimination prohibited by the ADA is discrimination "against a qualified individual with a disability because of the disability of such individual ...." 42 U.S.C. § 12112(a). Plaintiff's first step in proving that Defendants unlawfully discriminated against him in violation of the ADA is to make out a prima facie case of discrimination on the basis of disability. To make out a prima facie case on his failure-to-reasonably-accommodate claim, Plaintiff must prove the following basic elements:

(1) that he was an individual who had a disability within the meaning of the statute;

(2) that the [employer] had notice of his disability;

(3) that with reasonable accommodation he could perform the essential functions of the position ... ; and

(4) that the [employer] refused to make such accommodations.

*Rhoads v. FDIC*, 257 F.3d 373, 387 n. 11 (4th Cir.2001) (alterations in original) (internal quotation marks omitted) (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir.1999)). Likewise, to make out a claim for constructive discharge in violation of the ADA, Plaintiff must prove the following basic elements:

(1) he is within the ADA's protected class;

(2) he was discharged;

(3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and

(4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.

*Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir.2001) (citing *Ennis*, 53 F.3d at 58). In addition, because Plaintiff's claim is for constructive, as opposed to actual, discharge, Plaintiff must also prove that Newman Machine "deliberately made [his] working conditions intolerable in an effort to induce [him] to quit." *Taylor v. Va. Union Univ.*, 193 F.3d 219, 237 (4th Cir.1999) (internal quotations omitted).

1. Whether Plaintiff Is Disabled Within the Meaning of the ADA

▆▆▆▆ Under both Plaintiff's failure-to-reasonably-accommodate and constructive-discharge claims, therefore, Plaintiff must prove that he is within the ADA's protected class, that is, Plaintiff must prove that he is disabled within the meaning of the ADA. An individual is disabled under the ADA if he has "(A) a physical or mental impairment that substantially limits one or more of [his] major life activities ... ; (B) [has] a record of such an impairment; or (C) [is] regarded as having such

an impairment." 42 U.S.C. § 12102(2). In this case, Gallimore contends that he is disabled under § 12102(2)(A), that is, he has physical impairments that substantially limit at least one of his major life activities. (Compl.¶ 21.)[1] To meet the ADA's definition of a "major life activity," the activity must be .one that is "of central importance to daily life." *Toyota Motor Mfg., Ky., Inc., v. Williams,* 534 U.S. 184, 197, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002). To be "substantially limited" in a major life activity, the plaintiff must be significantly restricted in performing the activity. *See id.* at 196–97, 122 S.Ct. at 691. The Supreme Court has held that the ADA is "interpreted strictly to create a demanding standard for qualifying as disabled." *Id.* at 197, 122 S.Ct. at 691. In *Rhoads,* the Fourth Circuit Court of Appeals held that " '[s]ubstantially limits' means, inter alia, '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.' " *Rhoads,* 257 F.3d at 387 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). In summary, therefore, not all physical limitations are disabilities within the meaning of the ADA.

In his Complaint, Plaintiff claims that "he has a musculoskeletal condition that substantially impairs his ability to perform the major life activities of performing manual tasks, walking, standing, heavy lifting and working." (Compl.¶ 21(a).) In his Brief in Opposition to Defendants' Motion for Summary Judgment, however, Plaintiff only claims that he is substantially impaired in the major life activities of standing, walking, dressing, and bathing. (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 12.) Therefore, the Court agrees with Defendants' argument that Plaintiff has abandoned his allegations that he is substantially limited in the major life activities of heavy lifting and working. In addition, the Court further notes that Plaintiff may have technically abandoned his claim of being substantially limited in the major life activity of performing manual tasks because he did not specifically raise this claim in his Brief in Opposition to Defendants' Motion for Summary Judgment. Furthermore, as discussed above in Section II.A.3, Defendants also move this Court to strike Plaintiff's claims of dressing and bathing from Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment because these claims were not properly raised in Plaintiff's Complaint. (Defs.' Br. Supp. [1st] Mot. to Strike at 6.) However, without deciding whether Plaintiff adequately stated his claims that he was substantially limited in the major life activities· of dressing and bathing in his Complaint, the Court elects to decide these claims on the merits and will therefore not preclude Plaintiff from claiming that he is substantially limited in the major life activities of dressing and bathing. In summary, therefore, in· order to determine whether Plaintiff is disabled within the meaning of the ADA, the Court will consider whether Plaintiff was substantially limited in the major life activities

1. In his Complaint, Plaintiff also alleged that he "has a record of such impairment[s]" and "is regarded as having such impairment[s]." (Compl.¶ 21.) In his Brief in Opposition to Defendants' Motion for Summary Judgment, however, Plaintiff only contends that he is actually disabled, not that he has a record of being disabled or is regarded as being dis-

abled. Therefore, the Court will not address Plaintiff's claims of disability based on having a record of being disabled or being regarded as disabled because the Court finds that Plaintiff has abandoned these claims. For this reason, the Court deems Plaintiff to have withdrawn these claims, and these claims are therefore dismissed.

of standing, walking, dressing, and bathing.

Before addressing Plaintiff's specific claims that he is disabled, however, the Court must address an argument raised by Defendants in their Brief in Support of Motion for Summary Judgment and their Reply to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment that potentially affects each of Plaintiff's claims under the ADA. In their briefs, Defendants contend that Plaintiff has introduced no expert, medical evidence that he is disabled in the major life activities of standing, walking, dressing, and bathing. Defendants specifically argue that "Plaintiff's testimony regarding his physical limitations, without supporting medical testimony, is insufficient evidence to prove a disability." (Defs.' Br. Supp. Mot. Summ. J. at 10.) In support of their argument that medical evidence is required to prove a disability claim, Defendants cite *Grey v. Potter*, No. 1:00CV00964, 2003 WL 1923733 (M.D.N.C. Apr. 21, 2003). This Court notes, however, that the district court in *Grey* did not hold that medical evidence was required in an ADA case but only held that the plaintiff was not substantially limited in the major life activity of working because "[n]either the medical records nor Plaintiff's own statements about her condition indicate that the status of her injuries was likely to become permanent so as to qualify her as disabled under the ADA." *Id.* at *13. Thus, *Grey* does not support Defendants' argument that medical testimony is a per se requirement for Plaintiff to establish that he is disabled within the meaning of the ADA.

Defendants, however, further rely on *Douglas v. Victor Capital Group*, 21 F.Supp.2d 379 (S.D.N.Y.1998), for the proposition that "Plaintiff cannot create a genuine issue of material fact and avoid summary judgment by contradicting his own physician's expert testimony and opinions." (Defs.' Reply Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 3.) This Court notes that the district court in *Douglas,* adopting the Magistrate Judge's Report and Recommendation, held that the plaintiff's "own testimony (deposition and affidavit) as to the alleged limits on his ability to walk, without supporting medical testimony, simply is not sufficient to establish his prima facie case under the ADA." *Douglas,* 21 F.Supp.2d at 384 (internal quotations omitted). Thus, this Court agrees that *Douglas,* as it is applied in the Southern District of New York, does in fact support Defendants' contention that medical evidence is necessary for Plaintiff to withstand Defendants' Motion for Summary Judgment.

Defendants, however, cite no decision within the Fourth Circuit holding that *Douglas* is the law of this circuit, and this Court can find none. This Court further notes that *Douglas'* per se rule requiring medical evidence in a disability case appears to be the minority view among courts that have considered the issue. Contrary to *Douglas,* the Third Circuit Court of Appeals has noted that *Katz v. City Metal Co.,* 87 F.3d 26 (1st Cir.1996), is "[t]he most oft-cited court of appeals discussion of the issue" of whether medical evidence is necessary to make out a prima facie case under the ADA. *Marinelli v. City of Erie, Pa.,* 216 F.3d 354, 360 (3d Cir.2000) (citing *Katz* ). In *Katz,* the First Circuit Court of Appeals held that

There is certainly no general rule that medical testimony is always necessary to establish disability. Some long-term impairments would be obvious to a lay jury (e.g., a missing arm) and it is certainly within the realm of possibility that a plaintiff himself in a disabilities case might offer a description of treatments and symptoms over a substantial period that would put the jury in a position where it could determine that he did

suffer from a disability within the meaning of the ADA.

*Katz,* 87 F.3d at 32. Construing this language from *Katz,* the *Marinelli* court explained that "the necessity of medical testimony turns on the extent to which the alleged impairment is within the comprehension of a jury that does not possess a command of medical or otherwise scientific knowledge." *Marinelli,* 216 F.3d at 360. The court in *Marinelli* further noted that "other courts have held similarly, and have added that a lack of medical testimony should be a factor cutting against a plaintiff's claim of disability." *Id.* (citing decisions from various district courts); *see id.* at 361 n. 2 (noting that *Douglas* is contrary to the majority view).

In *Marinelli,* the court of appeals ultimately affirmed the district court's decision granting judgment as a matter of law to the defendant but refused to do so based solely on the plaintiff's failure to introduce medical evidence of his arm and neck pain. The court of appeals concluded that arm and neck pain were "among those ailments that are the least technical in nature and . . . the most amenable to comprehension by a lay jury." *Id.* at 361. In the present case, Defendants fail to show the need for medical evidence to assist a jury in understanding Plaintiff's alleged physical limitations, that is, whether the jury needs medical evidence to understand the nature of the alleged limitations to Plaintiff's major life activities of standing, walking, dressing, and bathing. This Court notes that the court of appeals in *Marinelli* did hold, however, that "given the other weaknesses in [the plaintiff's] disability claim, . . . the fact that [the plaintiff] did not produce a shred of medical evidence to substantiate his allegations of impairment argues in favor of the [employer's] position." *Id.* This Court agrees with the majority view expressed in *Katz* and *Marinelli* that the absence of medical evidence is not necessarily fatal to a plain-

tiff's ADA claim but that such an absence "argues in favor of the [employer's] position." Therefore, in evaluating whether Plaintiff has sustained his burden to demonstrate a genuine issue of material fact on his claims under the ADA, the Court will adhere to the majority rule as enunciated in *Katz* and *Marinelli* with respect to the medical evidence necessary to survive Defendants' Motion for Summary Judgment. Having addressed the necessity of medical evidence in an ADA case, the Court will now evaluate Plaintiff's claims that he is disabled because he is substantially limited in the major life activities of (a) standing, (b) walking, (c) dressing, and (d) bathing.

### a. Major Life Activity of Standing

Plaintiff contends that he has physical impairments that substantially limit him in the major life activity of standing. Specifically, Plaintiff contends that he can only stand for forty-five minutes at a time before needing to sit. (Gallimore Dep. at 15–16; Gallimore 2d Aff. ¶ 19.a.) Dr. Stephan B. Lowe, M.D., Plaintiff's doctor, stated in his deposition that, "generally speaking, standing is not a problem" for patients who have undergone hip replacement surgery. (Dr. Lowe Dep. at 20.) Dr. Lowe further stated, however, that "stand[ing] in one place" is "more of a problem than if [the patient is] able to move around a bit." (Dr. Lowe Dep. at 19–20.) Defendants therefore contend that Dr. Lowe's deposition testimony differs from Gallimore's statement that he can only stand for at most one hour. (Defs.' Br. Supp. Mot. Summ. J. at 10–11.) The Court notes, however, that Dr. Lowe's deposition testimony did not purport to say whether standing is a problem for Plaintiff; Dr. Lowe merely stated that standing in one place was generally not a problem for people who have undergone hip replacement surgery. Further, in a letter to Plaintiff's attorney, Dr. Lowe

stated that he "would prefer [Plaintiff] be involved in a sedentary occupation were one available." (Letter from Dr. Stephan Lowe to Stephen A. Boyce of 11/20/2000.) In this letter Dr. Lowe further stated that, with respect to recreational activities, he "discourage[d] [Plaintiff] from any sort of running or jumping activities" but permitted him to "swim, cycle, play golf or bowl." (*Id.; see* Dr. Lowe Dep. at 13–19.)

Plaintiff relies on *Nieves v. Individualized Shirts*, 961 F.Supp. 782 (D.N.J.1997), to support his contention that he is substantially limited in the major life activity of standing. This Court notes that the district court in *Nieves* held that the plaintiff had demonstrated a genuine issue of material fact that she was disabled in the major life activity of standing where she presented evidence supporting her contention that her varicose veins "prevent[ed] her from standing for prolonged periods of time" and was therefore "a physical disability which prevent[ed] the normal exercise of [her] bodily functions." *Id.* at 794 (last alteration in original) (internal quotations omitted). In *Nieves*, with respect to the major life activity of standing, the plaintiff's expert stated "that [the plaintiff] complained of difficulty squatting and kneeling or standing for more than 30 minutes because of pain and fatigue in her legs." *Id.* at 786 (internal quotations omitted). The expert further noted "that [the plaintiff] ha[d] difficulty walking in malls and exercising, fe[lt] confined [because] her legs fatigue[d] easily, [and] suffere[d] from sleep disruption, . . . leg spasms and throbbing knees." *Id.* (one alteration in original) (internal quotations omitted).

Defendants seek to distinguish *Nieves* by characterizing it as a case where the plaintiff "presented the court with expert, physician reports or testimony supporting the plaintiff['s] claimed physical limitations and opining that the plaintiff['s] physical conditions substantially limited [her] abili-ty to . . . stand for prolonged periods of time . . . ." (Defs.' Reply Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 2 (citing *Nieves* ).) Defendants contend, moreover, that Dr. Lowe's deposition testimony and his medical records "establish that Plaintiff is not substantially limited" in the major life activity of standing. (*Id.* at 3 (emphasis omitted).)

As discussed above, however, the Court agrees with the majority view expressed in *Katz* and *Marinelli* that the absence of medical evidence is not necessarily fatal to Plaintiff's ADA claim. However, in this case the Court notes that, even taking as true Plaintiff's evidence that he cannot stand for more than forty-five minutes to an hour without resting, Plaintiff has still failed to carry his burden that he is substantially limited in the major life activity of standing. While the Court notes that *Nieves* does offer some support to Plaintiff's claim that he is disabled within the meaning of the ADA, this Court agrees with other courts that have held under similar facts that the plaintiff failed to make out a prima facie case of disability. Specifically, in *Hoots v. Sara Lee Corp.*, No. 1:98CV00025, 1999 WL 1939252 (M.D.N.C. Mar. 12, 1999), the district court held that a plaintiff who contended that she could only stand for an hour before needing to rest for thirty to sixty seconds was not disabled within the meaning of the ADA. *Id.* at \*3–4. The court in *Hoots* relied in part on *Taylor v. Pathmark Stores, Inc.*, No. 96–337–JJF, 1997 WL 873547 (D.Del. Oct. 23, 1997), *aff'd in part, rev'd in part, remanded*, 177 F.3d 180 (3d Cir.1999). Subsequent to the decision in *Hoots*, the Third Circuit Court of Appeals in *Taylor* affirmed the district court's grant of judgment as a matter of law for the defendant with respect to the plaintiff's contention that he was actually disabled under the ADA. *See Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 187

(3d Cir.1999). The court of appeals reasoned that "[b]ecause [the plaintiff could] stand and walk for fifty minutes at a time, and [could] continue for longer periods if he [took] a break every hour, he [could] carry out most regular activities that require standing . . ., even though he [might] not be able to perform [his] job[ ] without accommodation." *Id.* at 186–87. The court of appeals therefore found as a matter of law that the plaintiff was not disabled in the major life activity of standing within the meaning of the ADA. *Id.* at 187.

In summary, therefore, even taking as true Plaintiff's assertions that he is unable to stand for more than forty-five minutes to an hour, the limitations on Plaintiff's ability to stand are not disabilities within the meaning of the ADA because these limitations do not substantially restrict Plaintiff in his ability to stand as compared to an average person in the general population. Plaintiff has therefore failed to demonstrate a genuine issue of material fact that he is disabled in the major life activity of standing.

### b. Major Life Activity of Walking

██ Having determined that Plaintiff is not substantially limited in the major life activity of standing, the Court will now consider Plaintiff's claim that he is disabled within the meaning of the ADA because his physical impairments substantially limit him in the major life activity of walking. In his Brief in Opposition to Defendants' Motion for Summary Judgment, Plaintiff cites the following evidence that, after having his second hip replaced, he was "substantially impaired" in the major life activity of walking: (1) "he walked with great difficulty and could not walk any significant distance without pain and sometimes had to use a cane," (2) "he could only lift his feet a few inches off the floor," (3) "he could not put one foot in front of the other," (4) "he could not go up or down steps without pain," (5) "he could not climb or descend steps or stairs without using his arms to pull him up or steady his descent," and (6) "he had to install handles in his house at all the steps and doors so he could get through them . . . ." (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 5 (citing Gallimore 2d Aff. ¶ 19; Dale Gallimore 2d Aff. ¶ 3).) Plaintiff further states that since his first hip-replacement surgery in 1994, he has walked "with a very noticeable limp." (*Id.* (citing Gallimore 2d Aff. ¶ 9).) Defendants contend, however, that Plaintiff's assertions of the limitations on his ability to walk are unsupported, and are in fact contradicted, by the medical evidence and therefore Plaintiff has failed to demonstrate a genuine issue of material fact that he is disabled in the major life activity of walking. (Defs.' Reply Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 4.) The question before this Court, therefore, is whether Plaintiff has proffered sufficient evidence to demonstrate that there is a genuine issue of material fact that he is substantially limited in the major life activity of walking so as to be disabled within the meaning of the ADA.

In his Brief in Opposition to Defendants' Motion for Summary Judgment, Plaintiff relies on the assertions contained in his Second Affidavit and his wife's Second Affidavit to demonstrate that he is substantially limited in the major life activity of walking. (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 5.) Plaintiff, however, fails to cite his own deposition testimony regarding the limitations on his ability to walk. The Court notes, however, that Plaintiff's deposition testimony is helpful to clarify the assertions contained in his and his wife's later testimony in their respective Second Affidavits. With respect to Plaintiff's contention that "he walked with great difficulty and could not walk any significant distance without pain and sometimes had to use a cane" (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 5), when asked in his

deposition whether he could walk one mile without pain, Plaintiff replied, "Possibly, maybe half a mile." (Gallimore Dep. at 188.) He further stated that he can walk around his house without pain (*id.*) and that he walks for recreation. (*Id.* at 64.) Further, Plaintiff stated in his deposition that he only uses a cane to walk sometimes. (*Id.* at 59–60.) With respect to Plaintiff's contention that "he could only lift his feet a few inches off the floor" (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 5), when asked in his deposition if he had problems with his balance "from just walking normally, walking around a room" (Gallimore Dep. at 58), Plaintiff responded as follows: "I can't pick my feet up at [sic] proper height . . . if I stand longer than an hour . . . ." (*Id.* at 58–59.)

With respect to Plaintiff's assertion that "he could not go up or down steps without pain" (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 5), the Court notes that in his deposition Plaintiff stated that it would be painful for him to climb "very many" stairs. (Gallimore Dep. at 189.) And with respect to his assertion that "he could not climb or descend steps or stairs without using his arms to pull him up or steady his descent" (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 5), when asked in his deposition "How are you at climbing stairs?" (Gallimore Dep. at 189), Plaintiff responded as follows: "I have to hold onto something going up. I have to hold onto something going down." (*Id.*) Finally, with respect to Plaintiff's assertion that "he had to install handles in his house at all the steps and doors so he could get through them" (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 5), in his deposition Plaintiff only mentioned a handle at the door to his shop because he needed it to negotiate the two steps at the entranceway into his shop. (Gallimore Dep. at 189–90.) Finally, with respect to Plaintiff's assertions that he still walks with a very noticeable limp, in his deposition he stated that after his right hip was re-

placed, he still "had severe osteoarthritis in his left hip . . . [and] had a very distinguished limp." (*Id.* at 196.) The Court, however, could locate no mention in Plaintiff's deposition about his alleged limp after Plaintiff had his left hip replaced.

Thus, the Court notes that in almost every instance the assertions of Plaintiff's and his wife's Second Affidavits are more favorable to Plaintiff than Plaintiff's own deposition testimony. The Court, however, does not find that Plaintiff's and his wife's Second Affidavits contradict his deposition testimony so as to require this court to disregard these affidavits when ruling on Defendants' Motion for Summary Judgment. *See Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 974–75 (4th Cir. 1990). Nevertheless, when deciding whether Plaintiff has proffered sufficient evidence to demonstrate a genuine issue of material fact that he is substantially limited in a major life activity, the Court will look at all the evidence, including the affidavits introduced by Plaintiff and his wife and Plaintiff's deposition testimony.

The Court notes that the Fourth Circuit Court of Appeals has not specifically addressed the precise issue before this Court, that is, "whether [Plaintiff has] adduced sufficient evidence from which a factfinder reasonably could conclude that the nature and severity of his [impairments] significantly restricted his ability to walk as compared with an average person in the general population." *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996). Other courts, however, have addressed the question of when a limitation on the ability to walk is severe enough to be a disability under the ADA. In *Kelly*, the Third Circuit Court of Appeals held that "a plaintiff who suffered from severe post-traumatic degenerative joint disease and protrusio acetabulum of the right hip joint and who walked with a limp, walked

slowly climbing stairs, and could not jog or walk for more than a mile was not substantially limited in the major life activity of walking." *Hoots,* 1999 WL 1939252, at *3 (citing *Kelly,* 94 F.3d at 105–08). The court of appeals in *Kelly* ultimately held that "comparatively moderate restrictions on the ability to walk are not disabilities." *Kelly,* 94 F.3d at 106. Likewise, in *Penny v. United Parcel Service,* 128 F.3d 408 (6th Cir.1997), the Sixth Circuit Court of Appeals held that "moderate difficulty or pain experienced while walking does not rise to the level of a disability." *Id.* at 416. Further, in *Stewart v. Weast,* 228 F.Supp.2d 660 (D.Md.2002), the district court held that "an inability to walk long distances or climb stairs does not in itself substantially limit the persons [sic] ability to walk within the meaning of the ADA." *Id.* at 662; *but cf. Johnson v. Maryland,* 940 F.Supp. 873, 877 (D.Md.1996) (finding that a plaintiff who walked with a limp as a result of Charcot–Marie–Tooth disease had demonstrated a genuine issue of material fact that he was substantially limited in the major life activity of walking), *aff'd per curiam,* 113 F.3d 1232, 1997 WL 240823 (4th Cir.1997) (noting that "Charcot–Marie–Tooth disease, a neuromuscular disorder which, among other things, causes tremors in [the plaintiff's] hands[,] ... qualifies as a disability under the ADA").

Plaintiff nevertheless relies on *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432 (7th Cir.2000). In *Sears, Roebuck & Co.,* the Seventh Circuit Court of Appeals held that there was a genuine issue of material fact whether the plaintiff in that case was disabled, and it therefore reversed the district court's decision granting summary judgment to the employer. In *Sears, Roebuck & Co.,* the plaintiff suffered from neuropathy that limited her ability to walk from her workstation to the employee cafeteria or to the mall food court. *Id.* at 435. The court of appeals found "that there exist disputed issues of material fact

regarding whether or not ... [the employee's] neuropathy substantially limits her ability to walk," *id.* at 438, and therefore, "on the basis of the testimony of both [the employee] and her physicians, the plaintiffs have met their burden of establishing a material dispute as to the severity of [the employee's] impairment." *Id.* at 439. In the present case, however, Plaintiff has failed to demonstrate a genuine dispute of material fact that he is disabled within the meaning of the ADA. Plaintiff contends that he "has proffered uncontroverted evidence that he is substantially more impaired in the major life activity of walking than the sales clerk in *Sears, Roebuck & Co.*" (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 13). This Court, however, in accordance with the rulings of *Hoots, Kelly,* and *Stewart,* finds that Plaintiff's deposition testimony and his and his wife's affidavits are simply insufficient as a matter of law to demonstrate that he is more than moderately impaired in his ability to walk. Further, Plaintiff has failed to offer any medical evidence whatsoever that he is limited at all in his ability to walk. As discussed above, Plaintiff is not required to introduce medical evidence of his disability in order to make out a claim under the ADA, but the absence of medical evidence "argues in favor of [Defendants'] position." *See Marinelli,* 216 F.3d at 361. In fact, the medical evidence that is available tends to indicate that Plaintiff is not substantially limited in his ability to walk. When asked in his deposition about restrictions placed on patients who had undergone hip replacement surgery, Dr. Lowe testified that he never placed any walking restrictions on these patients. (Dr. Lowe Dep. at 19.) Further, Dr. Lowe's notes regarding Plaintiff's visits to him after the second hip replacement surgery disclose that Plaintiff was walking without a limp and had no pain in his hip. (*See* Dr. Lowe Dep., Exh. 1.)

Viewed in the light most favorable to Plaintiff, this evidence fails to demonstrate a genuine issue of material fact that Plaintiff is substantially limited in the major life activity of walking. Instead, the evidence before the Court demonstrates that Plaintiff can walk half a mile without pain, walks for recreation, has no medical limitations on the distance he may walk, and is able to climb some stairs without pain. For the foregoing reasons, therefore, the Court finds that while Plaintiff may suffer from moderate physical limitations on his ability to walk, these limitations are not disabilities within the meaning of the ADA because they do not substantially limit Plaintiff in the major life activity of walking.

### c. Major Life Activity of Dressing

■ Plaintiff next contends that he is disabled in the major life activity of dressing. Defendants first contend, however, that "Plaintiff cited no case law to support the proposition that dressing ... [is a] major life activit[y] within the meaning of the Americans with Disabilities Act ...." (Defs.' Reply Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 3.) While the Court agrees with Defendants' argument that Plaintiff has cited no case law holding that dressing is a major life activity under the ADA, the Court notes that Defendants have likewise cited no cases holding that dressing is not a major life activity. The Court will therefore assume, without deciding, that dressing is a major life activity under the ADA.

Plaintiff contends that because "he [can-]not dress [him]self," he is disabled within the meaning of the ADA. (*See* Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 5.) Although it is unclear from Plaintiff's brief which physical impairments substantially limit him in the major life activity of dressing, it appears that these impairments are his inability, after his hip replacement surgery, to "bend down ...[,] squat, stoop, [or] kneel down." (*See id.*) In support of

his assertion that his physical impairments substantially limit his ability to dress himself, Plaintiff cites his and his wife's Second Affidavits as evidence that "he ... [can]not wear shoes with laces because he ... [can]not bend sufficiently to tie them ...." (*Id.*) He further asserts that "he ... [can]not put on his pants or socks without help...." (*Id.*) In his deposition, however, Plaintiff stated that he could put on his pants, but he needed an adaptive aid to do so. (Gallimore Dep. at 68–69.) Plaintiff further testified in his deposition that he also uses an adaptive aid to put on his socks. (*Id.* at 68.) Thus, the "help" that Plaintiff needs to dress is an adaptive aid, not another person such as his wife.

Defendants argue that under *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), this Court must consider Plaintiff's use of adaptive aids when determining whether Plaintiff is disabled within the meaning of the ADA. (*See* Defs.' Reply Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 4 n. 2 (citing *Sutton* ).) In *Sutton,* the Supreme Court held that "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act." *Sutton,* 527 U.S. at 482, 119 S.Ct. at 2146. The Supreme Court further held in *Sutton* that "whether a person has a disability under the ADA is an individualized inquiry." *Id.* at 483, 119 S.Ct. at 2147. The Fourth Circuit Court of Appeals has reiterated that *Sutton* requires that this Court conduct an individualized inquiry with respect to whether Plaintiff has demonstrated a genuine issue of material fact that he is disabled in the major life activity of dressing. *See EEOC v. Sara Lee Corp.,* 237 F.3d 349, 352 (4th Cir.2001) (citing *Sutton* ) (holding that

"[t]he determination of whether a person is disabled is an individualized inquiry, particular to the facts of each case").

■ The Court therefore conducts its analysis of whether the limitations on Plaintiff's ability to dress himself are substantial with respect to Plaintiff's particular situation and in light of the adaptive aids that Plaintiff uses to mitigate the effects of his physical impairments. In the present case, construing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff is able, with the help of an adaptive aid, to dress himself without any assistance from others. While it may take Plaintiff somewhat longer to dress himself than the average person, Plaintiff's physical impairments do not "substantially limit" his ability to dress himself so as to make him disabled within the meaning of the ADA. The Court finds, therefore, that Plaintiff is not substantially limited in the activity of dressing. Furthermore, because Plaintiff's claim that he is substantially limited in the major life activity of dressing fails, Defendants' Motion to Strike this claim from Plaintiff's Brief in Opposition to Motion for Summary Judgment is moot and, as stated in Section II.A.3 above, the Court will deny the Motion on that basis.

d. Major Life Activity of Bathing

■ Plaintiff also contends that he is substantially limited in his ability to bathe himself and is therefore disabled under the ADA on this basis. Plaintiff contends that "he ... [can]not bathe [himself] ... without an adaptive aid." (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 5 (citing Gallimore 2d Aff. ¶ 19; Dale Gallimore 2d Aff. ¶ 3).) As with the activity of dressing, Defendants again correctly argue that Plaintiff has failed to cite any case law holding that bathing is a major life activity under the ADA (Defs.' Reply Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 3), but the Court again

notes that Defendants likewise fail to cite any case law holding that bathing is not a major life activity. Therefore, the Court will assume, without deciding, that bathing is a major life activity under the ADA.

As with Plaintiff's claim that he is substantially limited in the major life activity of dressing, it is unclear exactly which physical impairments Plaintiff contends substantially limit his ability to bathe. Like his dressing claim, it appears that the physical limitations Plaintiff contends substantially limit his ability to bathe himself, much like his contentions as to dressing, are his inability, after his hip replacement surgeries, to "bend down ...[,] squat, stoop, [or] kneel down" (*id.*) because Plaintiff asserted in his deposition that he needs his wife to help him take a bath because he "can't bend towards [his] feet ...." (Gallimore Dep. at 190.) Plaintiff also appears to argue that a physical limitation on his ability to stand substantially limits him in the major life activity of bathing. In his deposition, Plaintiff stated that he has his wife help him "get in the bathtub" to take a bath. (*Id.* at 67.) Plaintiff also stated that when he showers, he sits down as a precaution to avoid falling. (*Id.* at 70.) Plaintiff further stated that his wife helps him get into the shower as a precautionary measure to avoid falling. (*Id.* at 88.)

With respect to Plaintiff's specific physical impairments, Plaintiff, however, offers no objective evidence that his alleged physical limitations on his ability to stand substantially limit him in the major life activity of bathing. In addition, with respect to Plaintiff's objective evidence of his physical impairments of being unable to bend down, squat, stoop, or kneel down, it is clear that with adaptive aids Plaintiff can bathe himself without significant restriction. As Defendants correctly note, Plaintiff stated in his deposition that he normally bathes by taking a shower and the assistance his wife provides is merely

precautionary. (*See* Defs.' Reply Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 4 (citing Gallimore Dep. at 88).) Further, Plaintiff again offers no medical evidence that he is substantially limited in his ability to bathe or shower by himself, and, while not conclusive, the absence of medical evidence weighs against this Court finding that Plaintiff has demonstrated a genuine issue of material fact that he is disabled within the meaning of the ADA. In summary, therefore, Plaintiff's physical impairments do not, within the meaning of the ADA, substantially limit him in the activity of bathing.

Construing the facts in the light most favorable to Plaintiff, the evidence demonstrates that Plaintiff is able, with the use of adaptive aids, to shower on his own. In fact, Plaintiff apparently concedes this point in his Brief in Opposition to Defendants' Motion for Summary Judgment. (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 5 (stating only that Plaintiff cannot bathe himself "without an adaptive aid").) As with dressing, while it may take Plaintiff longer to bathe than the average person, Plaintiff's physical impairments do not, as a matter of law, substantially restrict him in the major life activity of bathing and are therefore not disabilities within the meaning of the ADA. For the foregoing reasons, therefore, the Court finds that Plaintiff is not disabled on the basis of being substantially limited in the major life activity of bathing. Furthermore, because Plaintiff's claim that he is substantially limited in the major life activity of bathing fails, Defendants' Motion to Strike this claim from Plaintiff's Brief in Opposition to Motion for Summary Judgment is moot and, as stated in Section II.A.3 above, the Court will deny the Motion on that basis.

### 2. Failure to Reasonably Accommodate in Violation of the ADA

Based on the foregoing discussion, the Court has determined that Plaintiff has failed to demonstrate a genuine issue of material fact that he is substantially limited in any major life activity. As such, Plaintiff is not able to demonstrate that he is disabled within the meaning of the ADA. Because Plaintiff cannot establish that he has a disability within the meaning of the ADA, Plaintiff's claim that Newman Machine failed to reasonably accommodate his disability fails as a matter of law. *See Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir.2001) (granting summary judgment to the employer on the plaintiff's reasonable-accommodation claim where the plaintiff failed to prove she was disabled within the meaning of the ADA). This Court, therefore, will grant Defendants' Motion for Summary Judgment with respect to Plaintiff's claim that Defendants discriminated against him on the basis of disability by failing to provide reasonable accommodations.

### 3. Constructive Discharge in Violation of the ADA

In addition, Plaintiff's separate claim that he was constructively discharged on the basis of his disability must also fail because, even if Plaintiff could show constructive discharge, he cannot show that it occurred because of his disability. *See Taylor v. Virginia Union Univ.*, 193 F.3d 219, 238 (4th Cir. 1999) (citing *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 517 (7th Cir.1996)) (holding that, in a gender-discrimination case, to prove constructive discharge the plaintiff must prove that "the complained of conduct was motivated by discriminatory animus toward women"). Thus, as the Seventh Circuit Court of Appeals held in *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506 (7th Cir.1996), Gallimore "must prove, as with any other discharge claim under [the ADA], that he was constructively discharged because of his membership in a protected class." *Id.* at 517. In the

present case, however, Plaintiff has failed to prove that he falls within the ADA's protected class because he has failed to demonstrate a genuine issue of material fact that he is disabled within the meaning of the ADA. Therefore, Plaintiff's claim for constructive discharge in violation of the ADA fails as a matter of law because he is not disabled.

 Even if Plaintiff could demonstrate that he is disabled, Plaintiff would be unable to prove the elements of constructive discharge because Plaintiff cannot prove that Newman Machine "deliberately made [his] working conditions intolerable in an effort to induce [him] to quit." *Taylor*, 193 F.3d at 237 (internal quotations omitted). Plaintiff contends that Defendants subjected him to intolerable conditions by assigning him to the Quiet Cut Department in a deliberate attempt to force him to resign and that Plaintiff did in fact resign to avoid "crippling injury." (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 17–18.) Plaintiff's diary, however, demonstrates that Plaintiff actually decided to resign prior to being assigned to the Quiet Cut Department. In his diary entry dated November 3, 2000, Plaintiff stated that he had accepted another position where he would begin work on November 13, 2000, and that he would therefore give his notice of resignation to Newman Machine on November 7, 2000. (Gallimore Diary of 11/3/00.) The evidence demonstrates that Plaintiff was not assigned to the Quiet Cut Department until he returned to work on November 6, 2000 (Gallimore Diary of 11/6/00; Jeff Cox Aff. ¶ 4; Charles Myers Aff. ¶ 10–11). Furthermore, Plaintiff worked there on November 6 and 7 (Gallimore Diary of 11/6/00 & 11/7/00; Cox Aff. ¶ 4; Myers Aff. ¶ 10–11), and according to Plaintiff, he quit his job at Newman Machine on November 7, 2000. (Gallimore Diary of 11/7/00.) While it is unclear whether Plaintiff continued to work at Newman Machine after November 7, 2000, that is, whether Plaintiff merely put in his notice of resignation on November 7, 2000, or if he left Newman Machine altogether on that date, Plaintiff has proffered no objective evidence that he worked at Newman Machine after November 7, 2000, and Newman Machine has provided a sworn affidavit that he did not. (Myers Aff. ¶ 11.) According to Newman Machine, however, Plaintiff did not give his formal notice of resignation to Newman Machine until November 15, 2000. (Jean York Aff. ¶ 4.) Regardless, the precise date of Plaintiff's actual departure from Newman Machine is immaterial to the question of whether he was constructively discharged because the evidence shows that Plaintiff's resignation was not prompted by the conditions of the Quiet Cut Department but by his own preexisting desire to secure different employment. Thus, even assuming Defendants assigned Plaintiff to the Quiet Cut Department in a deliberate attempt to force him to resign, there is no evidence that Defendants' decision to resign resulted from intolerable working conditions in the Quiet Cut Department. In summary, therefore, Plaintiff proffers no evidence showing that, when he decided to resign on November 3, 2000, "a reasonable person in [his] position would have felt compelled to resign" because of his working conditions. *See Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985) (internal quotations omitted).

For the foregoing reasons, therefore, the Court will deny Plaintiff's claim for constructive discharge under the ADA. Furthermore, because Plaintiff's claim for constructive discharge under the ADA fails, Defendants' Motion to Strike this

claim from Plaintiff's Brief in Opposition to Motion for Summary Judgment is moot and, as stated in Section II.A.3 above, the Court will deny the Motion on that basis.

### C. Constructive Discharge in Violation of the Public Policy of North Carolina

■ Plaintiff finally contends that he was constructively discharged on the basis of disability in violation of the public policy of North Carolina as articulated in the North Carolina Equal Employment Practices Act ("NCEEPA"), North Carolina General Statutes sections 143–422.1 to – 422.3. (Compl.¶¶ 28–38.) Section 143–422.2 states that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of ... handicap by employers which regularly employ 15 or more employees." Thus, although North Carolina follows the employment-at-will doctrine, North Carolina courts have recognized a limited exception to this doctrine for terminations that violate public policy. Defendants contend, however, that Plaintiff's claim for constructive discharge in violation of the public policy of North Carolina fails as a matter of law because North Carolina only recognizes the public policy exception to the employment-at-will doctrine in cases of actual, as opposed to constructive, discharge. Plaintiff, however, cites *Cox v. Indian Head Industries, Inc.,* 123 F.Supp.2d 892, 900 (W.D.N.C.2000), for the proposition that North Carolina courts do recognize a claim for constructive discharge in violation of public policy. (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 18.) In *Cox,* the district court, citing *Graham v. Hardee's Food Systems, Inc.,* 121 N.C.App. 382, 386, 465 S.E.2d 558, 561 (1996), held that "North Carolina courts have recently recognized that a plaintiff could state a claim for wrongful discharge based on constructive discharge following unwanted sexual advances, touching and harassment." *Cox,* 123 F.Supp.2d at 900 (citing *Graham* ).

■ Although Plaintiff correctly cites *Cox* as standing for the proposition that North Carolina recognizes claims for wrongful constructive discharge, the North Carolina Court of Appeals in *Graham v. Hardee's Food Systems, Inc.,* on which *Cox* relies, specifically stated "that North Carolina courts have yet to adopt the employment tort of constructive discharge," and the court in *Graham* therefore merely assumed arguendo, but did not hold, that the tort existed. *Graham,* 121 N.C.App. at 385, 465 S.E.2d at 560. Furthermore, *Beck v. City of Durham,* 154 N.C.App. 221, 573 S.E.2d 183 (2002), cited by Defendants, is directly on point. In *Beck,* the North Carolina Court of Appeals, citing *Graham,* affirmed the dismissal of the plaintiff's claim for wrongful constructive discharge, holding that "North Carolina courts have yet to adopt [the] tort [of wrongful constructive discharge]." *Id.* at 231, 573 S.E.2d at 190 (citing *Graham,* 121 N.C.App. at 385, 465 S.E.2d at 560). Thus, the relevant North Carolina case law directly contradicts the holding in *Cox.* The Court also notes that the decisions from this district also uniformly contradict the holding in *Cox. See, e.g., Faircloth v. Duke Univ.,* 267 F.Supp.2d 470, 475–76 (M.D.N.C.2003) (citing *Graham* ) (holding that North Carolina does not recognize constructive-discharge claims and therefore dismissing the plaintiff's claim for constructive discharge); *Helmstetler v. Borden Chem., Inc.,* No. 1:02CV00121, 2002 WL 1602432, at *2 (M.D.N.C. June 13, 2002) (citing *Graham* ) (same). This Court holds that, inasmuch as *Cox* held that constructive-discharge claims are cognizable under North Carolina law, that decision is contrary to North–Carolina and Middle-

District case law, and this Court therefore declines to follow the decision in *Cox.* In summary, because the North Carolina courts have declined to recognize a public policy exception to the employment-at-will doctrine for constructive, as opposed to actual, discharges, this Court declines to do so as well. *See Sabrowski v. Albani–Bayeux, Inc.*, No. 1:02CV00728, 2003 WL 23018827, at *9 (M.D.N.C. Dec. 19, 2003) (declining to expand the public policy exception to the employment-at-will doctrine and leaving such expansion to the North Carolina legislature and courts).

For the foregoing reasons, therefore, Defendants' Motion for Summary Judgment with respect to Plaintiff's claim for wrongful constructive discharge in violation of the public policy of North Carolina is granted.

## IV. CONCLUSION

For the reasons discussed above, the Court will DENY Defendants' First Motion to Strike but will GRANT Defendants' Second Motion to Strike. Further, because the Court finds that Plaintiff is unable to establish a prima facie case of discrimination on the basis of disability, the Court will GRANT Defendants' Motion for Summary Judgment with respect to Plaintiff's failure-to-accommodate and constructive-discharge claims under the ADA. Further, because the North Carolina courts have not recognized a public policy exception to the employment-at-will doctrine for claims of wrongful constructive (as opposed to actual) discharge, the Court will also GRANT Defendants' Motion for Summary Judgment with respect to Plaintiff's claim of wrongful discharge in violation of public policy. All of Plaintiff's claims are therefore DISMISSED with prejudice.

An Order and Judgment consistent with this Memorandum Opinion shall be filed contemporaneously herewith.

*ORDER AND JUDGMENT*

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendants' first Motion to Strike [Document # 18] is DENIED.

It is FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants' second Motion to Strike [Document # 22] is GRANTED.

Finally, it is ORDERED, ADJUDGED, AND DECREED that Defendants' Motion for Summary Judgment [Document # 13] is GRANTED with respect to all of Plaintiff's claims. Plaintiff's claims are hereby DISMISSED with prejudice.