Clyde A. THOMAS, Jr, Plaintiff,

v.

John E. POTTER, Postmaster General, Defendant.

No. 1:02 CV 00934.

United States District Court,
M.D. North Carolina.

July 9, 2004.

David A. Manzi, Richard A. Peniston & Associates, PA., Charlotte, NC, for Plaintiff.

John W. Stone, Jr., Lynne P. Klauer, Office of U.S. Attorney, Greensboro, NC, for Defendant.

*MEMORANDUM OPINION*

BEATY, District Judge.

## I. INTRODUCTION

This matter is presently before the Court on a Motion to Dismiss and for Summary Judgment [Document # 18][1] filed by Defendant John E. Potter, Postmaster General of the United States Postal Service ("Defendant" or "Postal Service") on Plaintiff Clyde A. Thomas, Jr.'s ("Plaintiff" or "Thomas") claims of discrimination in violation of the Vocational Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701–796*l*. Specifically, Plaintiff contends that Defendant violated the Rehabilitation Act by failing to reasonably accommodate his disabilities and constructively discharging him on the basis of his disabilities. Also before the Court is Defendant's Motion to Strike [Document # 21], in which Defendant moves the Court to strike from the record portions of Plaintiff's evidence relating to the job requirements of his position.

---

1. In Defendant's Motion to Dismiss and for Summary Judgment [Document # 18] and its Memorandum in Support of Motion to Dismiss and for Summary Judgment [Document # 19], Defendant moves the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's purported claim for harassment because Plaintiff failed to exhaust his administrative remedies with respect to this claim. The Court notes that it is unclear from Plaintiff's Complaint whether Plaintiff was actually bringing a separate harassment claim or was merely including allegations of harassment in an attempt to bolster his reasonable-accommodation and constructive-discharge claims. In his Memorandum in Response to Defendant's Motion, Plaintiff did not dispute Defendant's contention that any harassment claim Plaintiff sought to raise would be barred for failure to exhaust administrative remedies. As such, the Court deems Plaintiff to have abandoned his harassment claim. In any event, however, the Court finds that Plaintiff failed to exhaust his administrative remedies with respect to a harassment claim, and such a claim would therefore also be dismissed on that basis, if in fact it was ever a part of Plaintiff's lawsuit.

## II. FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to Plaintiff, as this Court must do when deciding a motion for summary judgment, the Court will state the relevant facts. Plaintiff began working for the Postal Service in May 1984. He began his career with the Postal Service as a part-time flexible distribution clerk in the Lumberton, North Carolina, Post Office. Approximately three years later, Plaintiff transferred to the Raeford, North Carolina, Post Office. Shortly after this transfer, Plaintiff became a regular distribution/window clerk and was assigned primarily to the window.

On July 21, 1998, Plaintiff had a stroke. After being hospitalized, Plaintiff underwent out-patient rehabilitation for several months. He was diagnosed with chronic hypertension, insulin-dependent diabetes, and paralysis on the left side of his body.[2] Plaintiff's doctor did not clear him to return to work until November 27, 1998. When she did clear him to return, she subjected him to the following restrictions: (1) no more than twenty hours of work per week; (2) no lifting over twenty-five pounds; (3) no standing for more than one hour; (4) frequent rest breaks of fifteen minutes per hour; and (5) no repetitive bending or high heights. However, when Plaintiff requested to return to work on November 27, Steve Holden ("Holden"), the Postmaster of the Raeford Post Office, refused to allow Plaintiff to return to work, stating in a letter to Plaintiff that he had reviewed Plaintiff's request for a light-duty assignment but had "determined that with your restrictions, I cannot accommodate your request." (Klingel Dep. [Doc. # 19] Ex. 1.)

Plaintiff, however, attempted to find his own light-duty assignment. On December 7, 1998, Randall Fairbanks ("Fairbanks"), Plaintiff's coworker, agreed to trade jobs with Plaintiff. On March 1, 1999, Plaintiff was finally allowed to return to work and assume Fairbanks' job duties, and Fairbanks then undertook Plaintiff's old job duties. According to Plaintiff, Plaintiff's physical impairments did not prevent him from doing all of Fairbanks' job duties. On April 20, 1999, Plaintiff's doctor reduced Plaintiff's restrictions by allowing him to work eight hours per day, but Plaintiff's doctor also added a restriction that Plaintiff not commute farther than ten miles. These restrictions have remained in place.

In March 1999, Barry Klingel ("Klingel") temporarily replaced Holden as the Postmaster of the Raeford Post Office. Plaintiff contends that Klingel "continually harassed me by making unwarranted and unprofessional comments about my work performance." (Thomas Aff. [Doc. # 20] ¶ 8.) According to Plaintiff, "Klingel would stand behind me while I was working creating a very stressful environment." (*Id.*) On June 29, 1999, Klingel sent Plaintiff a letter informing Plaintiff that, effective July 2, 1999, the Postal Service could no longer accommodate his light-duty assignment. On July 2, 1999, Plaintiff filed for disability retirement, which became effective on September 3, 1999.

## III. PROCEDURAL HISTORY

After these events occurred, Plaintiff pursued two separate types of grievances with the Postal Service: (1) a union grievance claiming that the Postal Service failed to reasonably accommodate him in accordance with the National Agreement between the American Postal Workers Union and the United States Postal Service ("Na-

---

**2.** In Plaintiff's Deposition, Plaintiff clarified that his stroke initially manifested itself as "numbness on the left side of my body, loss of feeling, loss of some feeling on my left side, and loss of some control." (Thomas Dep. [Doc. # 19] at 13.)

tional Agreement") and (2) an Equal Employment Opportunity ("EEO") complaint for discrimination and retaliation on the basis of disability. The Court will discuss the procedural history of these administrative actions in turn, and it will then discuss the procedural history of Plaintiff's claims in this Court.

### A. Union Grievance for Violating the National Agreement

On or about July 12, 1999, Plaintiff filed a grievance pursuant to the National Agreement. His grievance proceeded to arbitration, and on October 5, 2001, the arbitrator found that the Postal Service had violated the National Agreement (1) "by denying [Plaintiff's] initial request for light duty after December 7, 1998" and (2) "by terminating [Plaintiff's] subsequent light duty assignment effective July 2, 1999." (Pl.'s Mem. Opp. Def.'s Mot. Dismiss & Summ J. Attach. 4 (hereinafter "Arbitrator's Decision") at 1, 12.) Because the arbitrator found that Defendant had violated the National Agreement, the arbitrator awarded Plaintiff compensation for four hours per day from December 8, 1998, through February 28, 1999, and also from July 2, 1999, until September 3, 1999 (Plaintiff's retirement date). (*Id.* at 12.) The arbitrator found, however, that because Plaintiff had retired from the Postal Service, "she lack[ed] the authority to grant his request to return to work in a limited duty capacity." (*Id.*) After negotiations between the Postal Service, the Union, and Plaintiff, the Postal Service paid Plaintiff $10,955.48 in satisfaction of the arbitrator's award, thus compensating Plaintiff for the periods December 8, 1998 through February 28, 1999, and July 2, 1999 until September 3, 1999. (Doris Blair Decl. [Doc. # 19] Attach. 10; Pl.'s Mem. Opp. Def.'s Mot. Dismiss & Summ. J. at 5.)

### B. EEO Complaint for Violating the Rehabilitation Act

On July 6, 1999, Plaintiff instituted his EEO claim by filing an Information for Precomplaint Counseling ("Informal Complaint") with the Postal Service's EEO office. (Doris Blair Decl. Attach. 1.) In his Informal Complaint, Plaintiff alleged that he had been discriminated against on the basis of his disabilities and that he had been retaliated against for engaging in union activity. On September 8, 1999, Plaintiff filed an EEO Complaint of Discrimination in the Postal Service ("Formal EEO Complaint"), alleging disability discrimination and retaliation for engaging in prior EEO activity. (*Id.* Attach. 5.) On December 15, 1999, the Postal Service's Office of EEO Compliance and Appeals, Allegheny/Mid–Atlantic Areas, accepted Plaintiff's Formal EEO Complaint for investigation of Plaintiff's claims of discrimination and retaliation. (*Id.* Attach. 6.) On September 29, 2000, the EEOC Administrative Law Judge ("ALJ") found as follows: (1) Defendant had discriminated against Plaintiff by failing to reasonably accommodate his disabilities; (2) Defendant had not constructively discharged Plaintiff; and (3) Defendant had not retaliated against Plaintiff for engaging in protected activity. (*Id.* Attach. 7 (hereinafter "ALJ Decision").) The ALJ therefore awarded Plaintiff back pay and benefits "from the date [Plaintiff] was removed from his light duty assignment until the date [Plaintiff] retired on disability." (ALJ Decision at 8.) The Postal Service then appealed the ALJ's decision to the EEOC. (*See id.* Attach. 8.) On August 12, 2002, the EEOC affirmed the ALJ's decision. (Doris Blair Decl. Attach. 9 (hereinafter "EEOC's Final Decision").) Because the Postal Service had already paid Plaintiff back pay for this period (July 2, 1999 until September 3, 1999) in connection with Plaintiff's grievance that Defendant had

violated the National Agreement, Defendant did not provide any additional back pay for Plaintiff.

## C. Civil Litigation

On October 31, 2002, within ninety days of the EEOC's Final Decision, Plaintiff filed a Complaint [Document # 1] in this Court alleging that Defendant failed to reasonably accommodate Plaintiff and constructively discharged Plaintiff in violation of the Americans with Disabilities Act. On January 6, 2003, Defendant filed a Motion to Dismiss [Document # 3] Plaintiff's Complaint because the Americans with Disabilities Act does not apply to the Postal Service. On January 9, 2003, Plaintiff filed his Amended Complaint [Document # 5], making essentially the same allegations as his original Complaint but instead bringing these allegations pursuant to the Rehabilitation Act, which, as Defendant concedes, is applicable to Defendant. In Plaintiff's Amended Complaint, Plaintiff claims that Defendant failed to reasonably accommodate Plaintiff's disabilities and that Defendant constructively discharged Plaintiff on the basis of his disabilities. As relief for these alleged wrongs, Plaintiff seeks compensatory and punitive damages, as well as reasonable accommodations and reinstatement to his former position as a Window Distribution Clerk. In the alternative, however, Plaintiff requests this Court to enforce the EEOC's Final Decision, which he contends Defendant has failed to comply with by not awarding him the back pay ordered by the EEOC administrative law judge.

On October 6, 2003, this Court issued an Order [Document # 15] denying Defendant's original Motion to Dismiss [Document # 3] because Plaintiff had adequately stated a cause of action in his Amended Complaint. On March 5, 2004, Defendant filed a Motion to Dismiss and for Summary Judgment [Document # 18]. Plaintiff subsequently filed his Memorandum in Opposition [Document # 20] on March 22, 2004, and Defendant filed its Reply Brief [Document # 23] on April 6, 2004. Believing portions of the exhibits attached to Plaintiff's Memorandum to be inadmissible, on April 6, 2004, Defendant also filed a Motion to Strike [Document # 21]. Plaintiff filed his Memorandum in Opposition to Defendant's Motion to Strike [Document # 24] on April 14, 2004, and Defendant filed its Reply Brief [Document # 25] on April 30, 2004. The Court held a hearing on this matter on July 6, 2004 (hereinafter "Motion Hearing"). The issues having been fully briefed and argued by the parties, this matter is ripe for adjudication.

## IV. MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

■ Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is considered "material" if it "might affect the outcome of the suit under the governing law ...." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Under this standard, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. As a result, the Court will only enter summary judgment in favor of the moving party when " 'the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the [nonmoving] party cannot prevail under any circumstances.' " Campbell v. Hewitt, Coleman & Assocs., 21 F.3d 52, 55 (4th Cir. 1994) (quoting Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir.1967)).

When ruling on a summary judgment motion, the Court "view[s] the evidence in

the light most favorable to the non-moving party, granting that party the benefit of all reasonable inferences." *Bailey v. Blue Cross & Blue Shield of Va.,* 67 F.3d 53, 56 (4th Cir.1995). The moving party bears the initial "burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law." *Catawba Indian Tribe of S.C. v. South Carolina,* 978 F.2d 1334, 1339 (4th Cir.1992) (en banc). Once the moving party has met this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* In so doing, the nonmoving party may not rest on mere allegations, denials, or unsupported assertions, but must, through affidavits or otherwise, provide evidence of a genuine dispute. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510; *Catawba Indian Tribe,* 978 F.2d at 1339. In other words, the nonmoving party must show "more than ... some metaphysical doubt as to the material facts," for the mere existence of a scintilla of evidence in support of its position is insufficient to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Catawba Indian Tribe,* 978 F.2d at 1339.

### B. Federal Employees' Right to Trial De Novo in Rehabilitation Act Cases

 It is well-settled that the Rehabilitation Act provides federal employees the right to a trial *de novo* in federal court after exhausting their administrative remedies. *See Chandler v. Roudebush,* 425 U.S. 840, 863–64, 96 S.Ct. 1949, 1960–61, 48 L.Ed.2d 416 (1976). In the present case, Plaintiff has requested either a full *de novo* review of the EEOC's Final Decision or, in the alternative, enforcement of the EEOC's Final Decision. Therefore, in determining whether Plaintiff is entitled to relief beyond the EEOC's Final Decision, this Court is not bound by the EEOC's finding of disability or liability. *See Chandler v. Roudebush,* 425 U.S. at 863–64, 96 S.Ct. at 1960–61; *Morris v. Rice,* 985 F.2d 143, 145–46 (4th Cir.1993).[3] Because the Court's review is *de novo,* the Court must apply the standards of the Fourth Circuit to determine whether Plaintiff has demonstrated a genuine issue of material fact that Defendant has violated the Rehabilitation Act. The Court will therefore apply the controlling case law to determine whether Plaintiff is entitled to relief in this Court on his claims that Defendant failed to reasonably accommodate his disabilities and constructively discharged him on the basis of his disabilities.

### C. Plaintiff's Rehabilitation Act Claims

Plaintiff claims that Defendant unlawfully discriminated against him on the basis of disability in violation of the Rehabilitation Act. Specifically, Plaintiff alleges that Defendant failed to reasonably accommodate his disabilities and constructively discharged him on the basis of his disabilities.

**3.** Although not cited by either party, the Court notes that the Fourth Circuit Court of Appeals in *Morris v. Rice,* 985 F.2d 143 (4th Cir.1993), and *Pecker v. Heckler,* 801 F.2d 709 (4th Cir. 1986), held that "the plaintiff may limit and tailor his request for *de novo* review, raising questions about the remedy without exposing himself to a *de novo* review of a finding of discrimination." *Morris,* 985 F.2d at 145 (citing *Pecker,* 801 F.2d at 711 n. 3). In the present case, however, based upon a thorough review of Plaintiff's Complaint, his Memorandum in Opposition to Defendant's Motion to Dismiss and for Summary Judgment, and Plaintiff's attorney's statements to the Court during the Motion Hearing, the Court finds that Plaintiff has failed to "limit and tailor his request for *de novo* review." Accordingly, in determining whether Plaintiff may obtain any relief from this Court, the Court must first review *de novo* the question of whether Defendant has even violated the Rehabilitation Act.

Plaintiff thus brings his claim under section 501 and section 504 of the Rehabilitation Act. Section 501(b) provides, in pertinent part, as follows:

Each department, agency, and instrumentality (including the United States Postal Service and the Postal Rate Commission) ... shall ... submit ... an affirmative action program plan for the hiring, placement, and advancement of individuals with disabilities in such department, agency, instrumentality, or Institution.

29 U.S.C. § 791(b). Section 504 provides as follows:

No otherwise qualified individual with a disability in the United States, as defined in [29 U.S.C. § 705], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination ... under any program or activity conducted by ... the United States Postal Service.

29 U.S.C. § 794(a). Remedies for violations of section 501 are governed by 29 U.S.C. § 794a(a)(1), which provides for remedies pursuant to section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16. Remedies for violations of section 504 are governed by 29 U.S.C. § 794a(a)(2).

Under both Plaintiff's failure-to-reasonably-accommodate and constructive-discharge claims (pursuant to either Rehabilitation Act section 501 or 504), Plaintiff must first prove that he is within the Rehabilitation Act's protected class, that is, Plaintiff must prove that he is disabled within the meaning of the Rehabilitation Act. See 29 U.S.C. §§ 791(b), 794(a), (d); Hooven–Lewis v. Caldera, 249 F.3d 259, 266–68 (4th Cir.2001); Walker v. Potter, 188 F.Supp.2d 590, 595 (D.Md.2002); Gib-

son v. Henderson, 129 F.Supp.2d 890, 897 (M.D.N.C.2001). Whether Plaintiff is disabled under the Rehabilitation Act "is a question of law for a court, not a question of fact for a jury." See Hooven–Lewis, 249 F.3d at 268. In making this determination, the Court also looks to cases decided under the Americans with Disabilities Act ("ADA") because, as the Fourth Circuit Court of Appeals has explained, the "ADA and Rehabilitation Act generally are construed to impose the same requirements due to the similarity of the language of the two acts." Baird ex rel. Baird v. Rose, 192 F.3d 462, 468 (4th Cir.1999). An individual is disabled under the Rehabilitation Act if he "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B).[4]

In this case, Plaintiff contends that he is disabled under § 705(20)(B)(i), that is, he has physical impairments that substantially limit at least one of his major life activities. (Pl.'s Mem. Opp. Def.'s Mot. Summ J. at 8.) Defendant does not dispute that Plaintiff has shown that he has physical impairments. Defendant instead contends that Plaintiff has failed to show that these physical impairments substantially limit him in a major life activity. To meet the Rehabilitation Act's definition of a "major life activity," the activity must be one that is "of central importance to daily life." Toyota Motor Mfg., Ky., Inc., v. Williams, 534 U.S. 184, 197, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002). To be "substantially limited" in a major life activity, the plaintiff must be severely restricted in performing the activity. Id. at 196–98, 122 S.Ct. at 691. The Supreme Court has held that the ADA (and thus the Rehabilitation

---

**4.** The definition under the ADA is virtually identical. See 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g).

Act) is "interpreted strictly to create a demanding standard for qualifying as disabled." *Id.* at 197, 122 S.Ct. at 691. In *Rhoads v. FDIC,* 257 F.3d 373 (4th Cir. 2001), the Fourth Circuit Court of Appeals held that " '[s]ubstantially limits' means, inter alia, '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.'" *Id.* at 387 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). In summary, therefore, not all physical limitations qualify as disabilities within the meaning of the Rehabilitation Act.

 In determining whether Plaintiff has demonstrated that he is disabled within the meaning of the Rehabilitation Act, this Court must conduct an individualized evaluation of whether Plaintiff's physical impairments substantially limit Plaintiff in a major life activity. *Toyota Motor Mfg.,* 534 U.S. at 198, 122 S.Ct. at 691–92. As the Supreme Court has held, the Rehabilitation Act "requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'" *Id.* (alterations in original) (quoting *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 567, 119 S.Ct. 2162, 2169, 144 L.Ed.2d 518 (1999)) Thus, "[i]t is insufficient for individuals attempting to prove disability status under this test to merely

submit evidence of a medical diagnosis of an impairment." *Id.* at 198, 122 S.Ct. at 691. The relevant time period for determining whether the plaintiff is disabled within the meaning of the Rehabilitation Act is while the plaintiff is still employed with the defendant. *Paris v. Arc/Davidson County, Inc.,* 307 F.Supp.2d 743, 758 (M.D.N.C.2004).

 In his Complaint, Plaintiff claims that his physical impairments "significantly restrict his ability to stand, lift, bend and reach." (Am.Compl.¶ 7.) In his Memorandum in Opposition to Defendant's Motion to Dismiss and for Summary Judgment, however, Plaintiff now claims that he is substantially limited in the following major life activities: "walking, sports activities, typing, reading, speaking, ability to stand for long periods of time and lack of energy," as well as lifting. (Pl.'s Mem. Opp. Def.'s Mot. Dismiss & Summ. J. at 8.)[5] Defendant contends, however, that Plaintiff should not be allowed, at this stage of the litigation, to now claim that he is substantially limited in additional major life activities. The Court notes that, until Plaintiff filed his Opposition Memorandum, Plaintiff had not offered any allegations or evidence that he was substantially limited with respect to the purported major life activities of walking, sports activities, typing, reading, speaking, and lack of energy. Therefore, because Plaintiff did not raise these alleged limitations either before the EEOC,[6] in his Amended Complaint, or in response to Defendant's questions during discovery,[7] the Court finds that Plaintiff

---

5. The Court notes that at no time has Plaintiff contended that he was substantially limited in the major life activity of working.

6. The EEOC administrative law judge did not mention in her decision Plaintiff's newly alleged limitations in the purported major life activities of walking, sports activities, typing, reading, speaking, and lack of energy. The ALJ found only that Plaintiff was substantially

limited in the major life activities of sitting, standing, lifting, bending, and reaching. (ALJ Decision at 4 (citing 29 C.F.R. § 1630.2(i)).) As discussed in Section IV.B above, the Court is not bound by the ALJ's determinations.

7. In its First Set of Discovery Requests, Defendant asked Plaintiff to "[i]dentify what major life activities are substantially limited by your disabilities . . . and describe in detail

may not raise his purported limitations in these new major life activities now.[8]

The Court will therefore only consider Plaintiff's contentions that he is disabled based upon his contentions that he is substantially limited in the major life activities of standing, lifting, bending, and reaching. (*See* Am. Compl. ¶ 7.) As an initial matter, the Court notes that Plaintiff has not cited any case law whatsoever in support of his contentions that he is substantially limited in any of these major life activities. Instead, in order to show that he is disabled, Plaintiff appears to rely upon the analysis used by the EEOC when it found Plaintiff to be disabled. Because the Court, as Plaintiff has requested the Court to do, is undertaking a *de novo* review, the Court is not bound by the EEOC's previous determination. Instead, the Court will follow the law of the United States Supreme Court and Fourth Circuit Court of Appeals to determine whether Plaintiff is disabled.[9]

### 1. Major Life Activity of Standing

■ Plaintiff contends that he has physical impairments that substantially limit him in the major life activity of standing. Specifically, Plaintiff contends that he can only stand for one hour at a time before needing to rest. (Thomas Aff. ¶ 3.) As Plaintiff stated in his affidavit, "Standing for over 1 hour causes my left foot to become numb ...." (*Id.*) Defendant con-

cedes that Plaintiff has shown that he has physical impairments that limit his ability to stand for extended periods of time. Defendant contends, however, that Plaintiff has failed to show that these impairments severely restrict Plaintiff's ability to stand as compared to an average person in the general population. In support of this contention, Defendant cites this Court's recent decision in *Gallimore v. Newman Machine Co.*, 301 F.Supp.2d 431 (M.D.N.C.2004). In *Gallimore*, this Court held that the plaintiff was not substantially limited in the major life activity of standing because the plaintiff had only shown that he was unable to stand for more than forty-five minutes to an hour. *Id.* at 446.

The question before the Court in the present case, therefore, is whether, after making an individualized assessment of the physical impairments that Plaintiff contends limit him in the major life activity of standing, there is any principled reason to distinguish this case from the Court's previous decision in *Gallimore*. The Court notes that, in his Memorandum in Opposition to Defendant's Motion to Dismiss and for Summary Judgment, Plaintiff fails to specifically address this Court's decision in *Gallimore*. Apparently, however, Plaintiff seems to contend that he is actually substantially limited in the major life activity of standing "[g]iven the totality of Plain-

how such major life activities are substantially limited by your disabilities." (Def.'s Mem. Supp. Mot. Dismiss & Summ. J. Ex. D.) In response, Plaintiff stated as follows:

Per Dr. Karen Smith on April 19, 1999: "I would advise patient may return to 8 hour work days, not greater than 8 hour work day [sic] but still maintain the current restrictions of no lifting greater than 25 pounds, no standing for greater than one hour, frequent rest breaks—15 minutes per hour, and no repetitive bending or to have exposure to high heights."

(*Id.*) Plaintiff did not identify any other major life activities that were substantially limited.

8. Regardless, even if the Court were to consider these new contentions, Plaintiff's claims would still fail because Plaintiff has offered no evidence that he is substantially limited in these major life activities as compared with an average person in the general population. *See Rhoads*, 257 F.3d at 387 (citing 29 C.F.R. § 1630.2(j)(1)(ii)).

9. The Court notes that it has reviewed the EEOC's decisions finding Plaintiff to be disabled and neither of these decisions cites any Supreme Court or Fourth Circuit authority supporting the EEOC's finding that Plaintiff is disabled.

tiff's physical condition ...." (Pl.'s Mem. Opp. Def.'s Mot. Dismiss & Summ. J. at 8.) The flaw with this argument, however, is that Plaintiff has also failed to show how the "totality" of his physical impairments substantially limit him in the major life activity of standing.

Furthermore, the case law upon which this Court relied to find that the plaintiff in *Gallimore* was not substantially limited in the major life activity of standing also supports this Court's finding that Plaintiff in this case has likewise failed to show that he is substantially limited in the major life activity of standing. *See Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 186–87 (3d Cir.1999) (holding that "[b]ecause [the plaintiff could] stand and walk for fifty minutes at a time, and [could] continue for longer periods if he [took] a break every hour, he [could] carry out most regular activities that require standing ..., even though he [might] not be able to perform [his] job[ ] without accommodation"); *Hoots v. Sara Lee Corp.*, No. 1:98CV00025, 1999 WL 1939252, at *3–4 (M.D.N.C. Mar.12, 1999) (holding that a plaintiff who contended that she could only stand for an hour before needing to rest for thirty to sixty seconds was not disabled within the meaning of the ADA). For the foregoing reasons, therefore, after reviewing Plaintiff's evidence documenting his limitations in the major life activity of standing, the Court finds, in accordance with the Court's holding in *Gallimore,* that Plaintiff has failed to demonstrate that he is substantially limited in the major life activity of standing.

### 2. Major Life Activity of Lifting

■ Plaintiff further contends that he is substantially limited in the major life activity of lifting. Defendant concedes that Plaintiff's physical impairments limit his ability to perform strenuous lifting. Defendant contends, however, that Fourth Circuit case law unequivocally holds that

Plaintiff would not be substantially limited in the major life activity of lifting based upon the facts of this case. Defendant contends, and this Court agrees, that the Fourth Circuit Court of Appeals' decision in *Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346 (4th Cir.1996) (per curiam), is controlling on the issue of whether Plaintiff is substantially limited in the major life activity of lifting. In *Williams,* the plaintiff had "restrictions that she refrain from lifting more than 25 pounds and pushing or pulling heavy objects." *Id.* at 348. Based on these restrictions, the court of appeals found that Plaintiff had failed to show that she was disabled within the meaning of the ADA, holding "that a twenty-five pound lifting limitation—particularly when compared to an average person's abilities—does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity." *See id.* at 349 (citing *Aucutt v. Six Flags Over Mid–America,* 85 F.3d 1311, 1319 (8th Cir.1996)). This holding has been consistently reaffirmed by other decisions within this circuit. *See, e.g., Corrigan v. Perry,* No. 97–1511, 1998 WL 129929, at **5–6 (4th Cir. Mar.24, 1998); *Paris,* 307 F.Supp.2d at 758.

The question before the Court, therefore, is whether, after making an individualized assessment of the physical impairments that Plaintiff contends limit him in the major life activity of lifting, there is any principled reason to distinguish this case from *Williams* and its progeny. In the present case, Plaintiff again contends that viewing the totality of his physical impairments, that is, his inability to stand for more than one hour, his inability to lift more than twenty-five pounds, his inability to work without taking frequent rest breaks, and his inability to bend repetitively, he is substantially limited in the major life activity of lifting. The Court, however, finds Plaintiff's evidence of his physical

impairments insufficient to show that he is substantially limited in the major life activity of lifting. Plaintiff has simply failed to show that he is substantially limited in the major life activity of lifting as compared to an average person in the general population.

### 3. Major Life Activities of Bending and Reaching

██ Plaintiff further contends, however, that he is substantially limited in the major life activities of bending and reaching. In support of this claim, Plaintiff offers as evidence his doctor's restrictions that he cannot engage in "repetitive bending." (Thomas Aff. ¶ 3.) Plaintiff, however, offers no evidence showing how his physical limitations substantially restrict his ability to bend and reach as compared with an average person in the general population. Furthermore, he offers no case law supporting his contention that he is substantially limited in bending and reaching, and the case law offered by Defendant and otherwise located by the Court demonstrates that Plaintiff has failed to show that he is substantially limited in these major life activities. *Cf. Paris,* 307 F.Supp.2d at 759 (holding that the plaintiff "failed to show that her alleged inability to . . . do any repetitive motion including bending and pulling substantially limits her in any major life activity"); *Thomas v. N. Telecom, Inc.,* 157 F.Supp.2d 627, 632 (M.D.N.C.2000) (noting that "[c]ourts have . . . found that a restriction on engaging in repetitive motions does not amount to a substantial limitation of a major life activity") (collecting cases). Because Plaintiff has failed to show that he is substantially limited in the major life activities of bending or reaching as compared to an average person in the general population, this Court finds that Plaintiff has failed to establish that his physical limitations on his ability to bend and reach render him disabled within the meaning of the Rehabilitation Act.

### 4. Whether the Totality of Plaintiff's Limitations Render Him Disabled Under the Rehabilitation Act

██ Plaintiff finally appears to contend, however, that by taking into account the totality of Plaintiff's moderate restrictions in his various major life activities, the Court should find that Plaintiff is disabled. (Pl.'s Mem. Opp. Def.'s Mot. Dismiss & Summ. J. at 8.) The flaw with Plaintiff's argument, however, is that Plaintiff's attempt to aggregate his limitations still fails to show how he is substantially limited in any major life activity as compared to an average person in the general population. *See Parkinson v. Anne Arundel Med. Ctr., Inc.,* 214 F.Supp.2d 511, 516 (D.Md.2002), *aff'd per curiam,* 79 Fed.Appx. 602 (2003), *cert. dismissed,* —— U.S. ——, 124 S.Ct. 2203, 158 L.Ed.2d 763 (2004).

Plaintiff thus appears to make the same argument rejected by the district court in *Parkinson.* In *Parkinson,* the district court found that the plaintiff was not disabled because he failed to show that he was substantially limited in the major life activities of working, lifting, bending, and running.[10] The plaintiff in *Parkinson* nevertheless argued, however, that the court should combine lifting, bending, and running into the major life activity of "basic movements of daily life." *Id.* at 516 n. 6 (internal quotation marks omitted). The court rejected this argument as being contrary to the Supreme Court's decision in *Toyota,* which "indicated that '[n]othing in the text of the [ADA], our previous opin-

---

**10.** The court in *Parkinson* assumed, without deciding, that bending and running are major life activities.

ions, or the regulations suggests that a class-based framework should apply outside the context of the major life activity of working.' " *Id.* (alterations in original) (quoting *Toyota,* 534 U.S. at 200, 122 S.Ct. at 693). The court further found that, even if Plaintiff were permitted to combine his life activities into a new life activity of basic movements of daily life, because the court had already "held that plaintiff [had] not demonstrated substantial limitations on his ability to run, bend, or lift, he also has not demonstrated a substantial limitation on his ability to engage in these 'basic movements of daily life.' " *Id.*

In summary, therefore, Plaintiff offers no support for his claim that "[g]iven the totality of Plaintiff's physical condition, he is a qualified individual with a disability under the [Rehabilitation Act]." (Pl.'s Mem. Opp. Def.'s Mot. Dismiss & Summ. J. at 8.) He therefore cannot establish that he is disabled merely by claiming that his evidence of moderate restrictions in various major life activities should be combined to prove that he is disabled within the meaning of the Rehabilitation Act.

### 5. Conclusion

In summary, therefore, Plaintiff has failed to show that he is disabled within

the meaning of the Rehabilitation Act. Accordingly, because Plaintiff does not come within the Rehabilitation Act's protected class, that is, one who is disabled within the meaning of the Rehabilitation Act, the Court must end its evaluation of Plaintiff's claims that Defendant failed to reasonably accommodate Plaintiff's disabilities and that Defendant constructively discharged Plaintiff on the basis of his disabilities. Because Plaintiff is not disabled within the meaning of the Rehabilitation Act, the Court therefore finds that Plaintiff's failure-to-reasonably-accommodate and constructive-discharge claims pursuant to the Rehabilitation Act fail as a matter of law. *See Hooven–Lewis v. Caldera,* 249 F.3d 259, 266–68 (4th Cir.2001); *Walker v. Potter,* 188 F.Supp.2d 590, 595 (D.Md.2002); *Gibson v. Henderson,* 129 F.Supp.2d 890, 897 (M.D.N.C.2001).

### D. Plaintiff's Alternative Request that the Court Enforce the EEOC's Final Decision

■■ In the alternative to a full *de novo* review of his case, Plaintiff also requests the Court to enforce the EEOC's Final Decision, which Plaintiff contends Defendant has failed to comply with.[11] The

---

**11.** As discussed above, the Court has conducted a full *de novo* review of Plaintiff's Rehabilitation Act claims and has found that Plaintiff has failed to establish his claim of disability under the Act. The first question before the Court, therefore, is whether Plaintiff is now even permitted to seek, in the alternative, a request for enforcement of the EEOC's Final Decision. Neither party cited any case law in their briefs or before the Court in the Motion Hearing addressing this issue. In addition, in its briefs in support of its Motion for Summary Judgment, Defendant never contended that this Court could not consider Plaintiff's alternative request for enforcement if the Court first denied Plaintiff's primary request for *de novo* review. However, in the Court's Motion Hearing, Defendant's attorney stated that if this Court conducts a full *de novo*

review and finds in favor of Defendant, the Court would in effect be overturning the EEOC's Final Decision and it could not then consider Plaintiff's alternative request for enforcement of that decision. In the context of this case, however, the Court need not decide whether, having conducted a full *de novo* review of the EEOC's Final Decision and found in favor of Defendant, the Court may, in the alternative, enforce the EEOC's Final Decision in favor of Plaintiff. The Court will merely assume, without deciding, that a plaintiff in a Rehabilitation Act case may request a district court to conduct a full *de novo* review of the EEOC's final decision and also request the district court, in the alternative, to merely enforce the award granted by the EEOC in its final decision.

EEOC's Final Decision provides, in pertinent part, the following:

The agency shall determine the appropriate amount of back pay (with interest, if applicable) and other benefits (including, if applicable, adjustments to his disability retirement benefits) due complainant for the date upon which complainant was removed from his light duty assignment [July 2, 1999] through the date complainant's disability retirement became effective [September 3, 1999]. The amount of back pay shall be calculated, pursuant to 29 C.F.R. § 1614.501, no later than sixty (60) calendar days after the date this decision becomes final. Complainant shall cooperate in the agency's efforts to compute the amount of back pay and benefits due, and shall provide all relevant information requested by the agency. If there is a dispute regarding the exact amount of back pay and/or benefits, the agency shall issue a check to the complainant for the undisputed amount within sixty (60) calendar days of the date the agency determines the amount it believes to be due.

(EEOC's Final Decision at 3.)

Plaintiff contended in his Complaint that the Postal Service has failed to comply with the EEOC's Final Decision because it never paid Plaintiff back pay as ordered.[12] Defendant does not dispute that the Postal Service did not pay out any additional money to satisfy the EEOC's award. Defendant instead contends that because the EEOC's award of back pay duplicated the back pay award that Plaintiff received as a result of his union grievance, Defendant has completely satisfied its obligations pursuant to the EEOC's Final Decision.

Plaintiff agrees with Defendant that "any award to Plaintiff . . . may be offset by the $10,955.48 previously paid" as a result of his union grievance. (Pl.'s Mem. Opp. Def.'s Mot. Dismiss & Summ. J. at 16.) Plaintiff contended in his Response Brief, however, that "[t]he relief *sought* in Plaintiff's EEOC Complaint goes beyond the relief *awarded* in the separate grievance procedure." (*Id.* at 15–16 (emphasis added).) The relevant question before the Court in enforcing the EEOC's Final Decision as Plaintiff requests, however, is not what relief Plaintiff sought from the EEOC, but what relief the EEOC awarded. Thus, unless Plaintiff can demonstrate a genuine issue of material fact that the EEOC's award goes beyond the award he received from the arbitrator for his claim under the National Agreement, Defendant is entitled to summary judgment with respect to Plaintiff's request for enforcement of the EEOC's Final Decision. In comparison to the EEOC's Final Decision, the Court finds that the arbitrator in Plaintiff's claim under the National Agreement ordered the Postal Service to compensate Plaintiff as follows:

[T]he grievant shall be compensated for four hours per day for a total of twenty hours per week for the light duty assignment which should have been provided to him from December 8, 1998 through February 28, 1999; this award includes any benefit entitlement as well. . . .

The grievant shall also be compensated for four hours per day for a total of twenty hours per week from July 2, 1999 until September 3, 1999 when he retired; this award includes any benefit entitlement as well.

(Arbitrator's Decision at 12.)

The Court notes, therefore, that the only relief the EEOC awarded Plaintiff was back pay from July 2, 1999 through September 3, 1999, which the arbitrator had

---

**12.** Plaintiff has not disputed that the Postal Service complied with the other aspects of the EEOC's Final Decision, which required the Postal Service to take remedial measures to prevent disability discrimination from occurring at the Raeford Post Office in the future.

already awarded to Plaintiff. Plaintiff has failed to demonstrate a genuine dispute that the arbitrator's award of back pay would therefore not fully offset the EEOC's award of back pay. Although in the Motion Hearing Plaintiff's attorney initially stated that, in certain respects (i.e., hours per day and interest on the back pay amount), the award granted Plaintiff in the EEOC's Final Decision might be calculated differently than the award granted in the Arbitrator's Decision, he offered no evidence or argument to support these contentions. In fact, later in the Motion Hearing, Plaintiff's attorney even conceded that the award Plaintiff received pursuant to his arbitration claim would fully offset the award granted by the EEOC.[13] Accordingly, the Court finds that Plaintiff has failed to demonstrate a genuine issue of material fact that the Postal Service has failed to fully satisfy the EEOC's Final Decision ordering it to pay back pay to Plaintiff for the period from July 2, 1999 until September 3, 1999. In summary, even assuming the Court should reach Plaintiff's request for enforcement of the EEOC's Final Decision, the Court finds that Plaintiff has failed to show any aspect of the EEOC's Final Decision that Defendant has not complied with. For this reason, Defendant's Motion to Dismiss and for Summary Judgment is granted with respect to Plaintiff's request that the Court enforce the EEOC's Final Decision.

## V. CONCLUSION

For the reasons discussed above, to the extent that Plaintiff alleged that he was harassed on the basis of his disabilities, the Court will grant Defendant's Motion to Dismiss this claim because Plaintiff failed to exhaust his administrative requirements with respect to this claim, if indeed Plaintiff ever sought to pursue this claim at all. In addition, because the Court finds that Plaintiff has failed to show that he is disabled within the meaning of the Rehabilitation Act, the Court will grant Defendant's Motion for Summary Judgment with respect to Plaintiff's failure-to-reasonably-accommodate and constructive-discharge claims under the Rehabilitation Act. Further, assuming it is appropriate for the Court to address Plaintiff's alternative request that the Court enforce the EEOC's Final Decision, because Plaintiff has failed to demonstrate a genuine issue of material fact that Defendant has not fully complied with the EEOC's Final Decision, the Court will also grant Defendant's Motion for Summary Judgment with respect to Plaintiff's alternative claim that this Court enforce the EEOC's Final Decision. Finally, the Court will deny Defendant's Motion to Strike portions of Plaintiff's evidence as moot because the evidence Defendant seeks to strike is not probative on the dispositive questions before the Court, that is, whether Plaintiff has demonstrated that he comes within the Rehabilitation Act's protected class or whether Defendant failed to comply with the EEOC's Final Decision.

An Order and Judgment consistent with this Memorandum Opinion shall be filed contemporaneously herewith.

---

**13.** When asked by the Court if the EEOC's award would be greater than the arbitrator's award, Plaintiff's counsel responded as follows:

It probably would not, Your Honor. I have to concede that it probably would not and I would probably have to concede, Your Honor, that if all there was was the enforcement of the EEOC order-and to be honest with the Court, at the time the complaint was originally filed I was unaware of the order that-the agreement-the arbitrator's agreements, but I would say it's probably going to be a push and the amount from the arbitration agreement would be the same as it would have been under the EEOC.
(Mot. Hr'g Tr.)

*ORDER AND JUDGMENT*

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant's Motion to Dismiss and for Summary Judgment [Document # 18] is GRANTED with respect to all of Plaintiff's claims. Plaintiff's claims are hereby DISMISSED with prejudice.

It is FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant's Motion to Strike [Document # 21] is DENIED as moot.